Nila Junior GILBERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00387–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 7, 1994.

Stephen L. Baker, Bryan, for appellant.

Bill Turner, Eric D. Smith, Brazos County, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and HUTSON–DUNN, JJ.

## OPINION

HUTSON–DUNN, Justice.

After trial by jury, appellant, Nila Junior Gilbert, was convicted of possession of co-

caine. The trial court assessed punishment at 25–years confinement.

## BACKGROUND

On July 23, 1992, Officers of Bryan Police Department's Street Crime Apprehension Team (SCAT), were conducting a narcotic surveillance of a residence located at 1000 West Martin Luther King Boulevard in Bryan. Two weeks before SCAT's surveillance of the residence, SCAT had made an arrest at the same location and had seized 39 rocks of crack cocaine.

On July 23, 1992, Officer Dennis Thane was positioned in the bushes of an empty lot near the residence under surveillance. He observed appellant's vehicle drive past the residence, make a U-turn, and then return and stop in the street next to the residence. Appellant was driving the vehicle at the time, and his nephew, Richard Gilbert, was a passenger. After a few moments, a female approached the car on the passenger side. As the female approached the car, she was looking all around, and was observant of passers-by as well as vehicles. When she reached the vehicle, she extended her arms into the vehicle. Officer Thane testified that it looked as if she were making an exchange with both appellant and the passenger because she extended her arms totally inside the vehicle, and moved them back and forth as if exchanging some item. The female then turned and walked back toward the residence with her hands cupped at waist level.

Officer Thane radioed to the other SCAT members in the area and informed them of what he had observed. A marked patrol unit initiated a stop of appellant's vehicle. After the marked unit activated its lights, appellant's vehicle slowed down, but continued for several blocks before stopping.

After appellant stopped the car, both he and Richard Gilbert quickly exited the car. At that time, the SCAT officers noticed several chips of crack cocaine in the vehicle. Chips of crack cocaine were recovered from both the driver's side and the passenger's side of the vehicle. Both appellant and Richard Gilbert were placed under arrest. The officers also recovered several single-edged razors from the passenger's seat. In the glove compartment the officers found $90. Approximately $700 was recovered from Richard Gilbert's pockets.

## MOTION TO SUPPRESS

In two points of error, appellant challenges the denial of his motion to suppress the evidence seized as a result of his stop and subsequent arrest.

**1. Continuance of the motion to suppress after arguments completed**

In his second point of error, appellant contends that the trial court erred by admitting additional evidence at a pretrial hearing on the motion to suppress after both appellant and the State had submitted their legal arguments to the court.

On March 12, 1993, a pretrial hearing was held on appellant's motion to suppress. However, several of the State's witnesses were unable to attend due to illness. Nevertheless, the State agreed to proceed by affidavit. Appellant introduced into evidence a certified copy of a probable cause statement executed by one of the SCAT officers. The State entered no other evidence. Appellant and the State made their legal arguments. The Court concluded that the evidence was incomplete, and continued the suppression hearing until the date of trial in order to "give the State the opportunity to marshall its missing evidence."

On March 22, 1993, the motion to suppress was taken up again. At this time, the State wished to produce the testimony of one of the SCAT team officers. Appellant objected to the additional evidence, but his objection was overruled.

Appellant contends that the trial court erred by allowing this additional evidence at the second suppression hearing, and urges this Court to consider only the evidence presented at the first suppression hearing, i.e., the affidavit of probable cause. In support of his position, appellant cites several cases that prohibit the re-opening of the evidence of a cause after argument has been concluded. See Andrews v. State, 199 S.W.2d 510, 513 (Tex.Crim.App.1947). This rule is em-

bodied in article 36.02 of the Code of Criminal Procedure, which provides in part, "[t]he court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX.CODE CRIM.P.ANN. art. 36.02 (Vernon 1981).

■ However, we find the rule inapplicable to a pretrial motion to suppress. In *Montalvo v. State*, 846 S.W.2d 133, 137–38 (Tex.App.—Austin 1992, no pet.), the defendant and the State had both presented their evidence and legal arguments at the motion to suppress, and the trial court had ruled in the defendant's favor. The trial judge then allowed the State to reopen the evidence. After receiving the State's new evidence, the trial court reversed his earlier ruling, and denied the defendant's motion to suppress. The court of appeals held that the trial court did not err in allowing the evidence at the suppression hearing to be reopened after argument. *Id.* at 138.

Because the trial court may, in its discretion, reopen the evidence on a motion to suppress even after legal arguments are completed, we will consider all of the evidence presented at both suppression hearings to determine whether the trial court's ruling on the motion to suppress was proper.

Appellant's second point of error is overruled.

## 2. Validity of the investigatory stop

In his first point of error, appellant contends that the trial court erred by denying his motion to suppress evidence. Specifically, appellant contends that the SCAT officers had no grounds to warrant an investigatory stop of his vehicle.

The trial court is the sole fact finder at a hearing on a motion to suppress evidence and may choose to believe or disbelieve any or all of the witnesses' testimony. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App. 1991); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Because the trial court is the sole fact finder at the suppression hearing, we are not at liberty to disturb any finding that is supported by the record. *Johnson,* 803

S.W.2d at 287; *Harris v. State*, 827 S.W.2d 49, 50 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

■ It is well settled that a police officer may temporarily detain a person for purposes of investigating possible criminal behavior even though there is no probable cause for arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1972). Occupants of automobiles are as subject to a brief detention as are pedestrians. *Gearing v. State*, 685 S.W.2d 326, 328 (Tex. Crim.App.1985); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). To justify such a detention, the officer must have specific articulable facts that, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Daniels v. State*, 718 S.W.2d 702, 705 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). There must be a reasonable suspicion that some activity out of the ordinary has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Id.; Gearing,* 685 S.W.2d at 328. In determining whether there is a legitimate basis for suspicion, the facts may be viewed from a trained law enforcement officer's viewpoint. Facts meaningless to the untrained may provide the basis for the deduction and inferences that caused the officers to focus their attention on the accused. *United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

At the second suppression hearing, Officer Thane testified that he had been employed by the Bryan Police Department for 5½ years. Before becoming a part of the SCAT team, he had received specialized training in investigating street-level narcotics crime. As a SCAT officer, he had made over 300 narcotics arrests, and had observed at least 250 drug transactions.

Officer Thane also gave a description of a typical drive-by drug transaction. In such a sale, a vehicle generally pulls into an area

that has been documented as an area with a high volume of street-level drug sales. A person will then approach the vehicle, and an exchange of drugs for money lasting two to five seconds will occur. In conducting surveillance for such transaction, Officer Thane testified that SCAT will look for whether one of the parties to the transaction is a known drug dealer, the time of day, and whether the person making the sale appears nervous or watchful for approaching cars or persons. He also testified that the person making the exchange will usually cup his or her hands inside the vehicle so the exchange cannot be witnessed from outside the vehicle.

Officer Thane testified that on the day appellant was arrested, SCAT was investigating drug trafficking occurring at the residence located at 1000 Martin Luther King Boulevard. SCAT had received citizen complaints of narcotics being sold from that residence. SCAT also had confidential informants making drug buys at that location. Two weeks before the date in question, SCAT had arrested an individual at that location in possession of 39 crack cocaine rocks.

Officer Thane observed as appellant's vehicle drove past the residence under surveillance, and then made a U-turn, at about 10:30 p.m. For no apparent reason, appellant stopped his car in the middle of the block near the residence. Appellant's car was still running and was still in gear. The car was not pulled up next to the curb, but was in the lane of traffic. A female, continuously looking left and right, approached the car, extended her arms inside, and then a few seconds later, withdrew her cupped hands from the car. Officer Thane testified that although he did not see what was exchanged, based on his professional expertise, he believed that a drug transaction had taken place and radioed the other SCAT members to initiate an investigatory stop.

In *McKinney v. State*, 761 S.W.2d 549, 552–53 (Tex.App.—San Antonio 1988, no pet.), the court found that the police officer did not have reasonable suspicion to stop the defendant after the officer witnessed an exchange similar to the exchange in this case. In doing so, the court noted that even though the stop occurred in an area with a reputation for high narcotics activity, the State had not shown that the officer was experienced in detecting drug transactions, no evidence was introduced about the character, size, or shape of what was exchanged, there was no evidence that either party to the transaction was previously suspected of engaging in drug transactions, and there was no evidence that drugs were normally exchanged in a similar manner. *Id.*

However, in the present case, the State introduced evidence to show that not only was this an area known to be high in narcotics activity, the officers had targeted the residence at this location for surveillance as a "crack house" because of citizen complaints. The officers had also had informants make buys at this house, and had made an arrest at this location and seized a significant amount of cocaine only two weeks earlier. The State also introduced evidence of Officer Thane's expertise in detecting drug transactions, including witnessing over 250 drug sales, and had him describe a typical drive-by drug transaction. Appellant's actions were very consistent with the officer's description of a typical drive-by transaction, a fact admitted by appellant.

At the first suppression hearing, appellant introduced a certified copy of a probable cause statement executed by Officer Sharean Gideon. Officer Gideon testified that, on the night of appellant's arrest, she and Officer Jarrott were travelling on West Martin Luther King Drive in an unmarked vehicle when they received information from Officer Thane regarding a possible narcotics offense. Officer Gideon contacted Officer Cantu, who was travelling in a marked unit, and had him initiate a stop of appellant's vehicle. Officer Cantu activated his emergency lights, and appellant slowed his vehicle, but refused to come to a complete stop. Appellant's vehicle turned onto another street, but continued on. As he made the turn, Officer Gideon was able to see that the window on the passenger side was rolled down. Because appellant had taken so long to stop his vehicle after Officer Cantu had activated his emergency lights, and because the officers had noted a lot of movement in the vehicle, the officers told

appellant and Richard Gilbert to put their hands out of the window. After appellant and Richard Gilbert were removed from the vehicle, the officers noticed and recovered several white chips from both the passenger's seat and the driver's seat.

■ We also find appellant's actions after being signalled to pull over by Officer Cantu to be relevant to a determination of reasonable suspicion. Until a defendant yields to a show of authority by police officers, there is no seizure within the meaning of the fourth amendment of the United States Constitution. *California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991). The same is true under article I, section 9 of the Texas Constitution. *Johnson v. State*, 864 S.W.2d 708, 722 (Tex.App.—Dallas 1993, pet. granted).

■ Appellant was not seized or detained until he complied with the officers' signal to pull over. Any events occurring after the show of authority by the officers, i.e., when the emergency lights were activated, until appellant finally pulled over, are relevant to a determination of reasonable suspicion. Therefore, we must consider the fact that appellant turned onto another street and continued driving for some distance, even after he had been signalled to pull over by the officer. Flight from a show of authority may be a factor in support of a finding of reasonable suspicion. *U.S. v. Silva*, 957 F.2d 157, 160 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 250, 121 L.Ed.2d 182 (1992).

■ In light of the facts that appellant was seen by Officer Thane in front of a known "crack house" engaging in conduct that appeared very consistent with a typical drive-by drug transaction, and that he failed to yield to a show of police authority in a timely fashion, we find that the officers had sufficient information to form a reasonable suspicion that a drug transaction had occurred. Therefore, the investigatory stop of appellant's vehicle was valid.

Appellant's first point of error is overruled.

## "BACKDOOR" HEARSAY

In his third point of error, appellant contends that the trial court erred by admitting hearsay testimony over his objection. Appellant argues that although no specific hearsay statement was elicited, it was nonetheless presented to the jury by implication. Such "backdoor" hearsay is subject to the same rules and limitations as the more common form of hearsay. *Schaffer v. State*, 777 S.W.2d 111, 113 (Tex.Crim.App.1989).

On direct examination, Officer Thane testified that approximately $700 had been seized when appellant and Richard Gilbert were arrested, and that such an amount of money would be enough to purchase a "cookie" of cocaine. He testified that he was familiar with forfeiture proceedings, which were essentially "taking a drug dealer's money." He then testified about his discussions with Richard Gilbert about the money that was seized:

(Prosecutor) Okay. Were there any questions and answers concerning this money?

(Thane) Yes, sir, it was.

(Prosecutor) And that was with Richard Gilbert?

(Thane) That is correct.

(Prosecutor) And what did you ask Richard Gilbert?

. . . . .

(Thane) Yes, Sir. I asked Richard Gilbert where the money came from.

(Prosecutor) After talking to Richard Gilbert, what did you do then?

(Thane) Continued the booking process and after I finished that I went into the Police Department and after I placed both of them in a holding cell, went into the Police Department to make some phone calls to an individual to obtain some information.

(Prosecutor) Who did you call?

(Thane) I called Dorothy McGee which is Richard Gilbert's mother.

(Prosecutor) And what did you ask Mrs. Gilbert?

*(Thane) I asked her if she knew how much money Richard Gilbert was in possession of and where it came from.*

*(Prosecutor) After talking to Mrs. Gilbert, what did you do?*

*(Thane) I informed Officer Jarrott to seize the entire amount of money.*

(Prosecutor) Did you go back and contact Richard Gilbert after that?

(Thane) Yes, sir, I did.

(Prosecutor) And what did you tell Richard Gilbert?

(Thane) That his money was being seized—

*(Appellant's counsel) Objection, Your Honor. I think he's fixing to make a hearsay upon hearsay statement as to what Mr. Gilbert's mother may have said to her in an attempt to communicate what was said in that conversation.*

(The Court) I trust he won't. Overruled.

Appellant contends that the questioning by the State elicited the hearsay testimony of Dorothy McGee. Specifically, appellant complains that when Officer Thane testified that he talked to Ms. McGee, and then informed Officer Jarrott to seize Richard Gilbert's money, the hearsay implication created was that Ms. McGee had told the officer that the money was drug money.

▪ We find that appellant has failed to preserve this point of error for review. In order to preserve error, an appellant must present the trial court with a timely objection, state the specific grounds for the ruling desired, and obtain a ruling on the objection. TEX.R.APP.P. 52(a). Appellant's objection was clearly prospective in nature. He was objecting to a hearsay statement that he believed the witness was *preparing* to make. However, he made no objection to the earlier statement by Officer Thane that he now contends constituted "backdoor hearsay." In fact, after Officer Thane testified that he had authorized the seizure of Richard Gilbert's money, the State followed up with two additional questions before appellant lodged any sort of objection. An objection must be made as soon as the ground of objection becomes apparent in order for the error to be preserved for review. *Thompson v. State,* 691 S.W.2d 627, 635 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153; *Barnett v. State,* 733 S.W.2d 342, 347 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Therefore, we find that appellant failed to present the trial court with a timely objection.

Appellant's third point of error is overruled.

## EVIDENCE OF EXTRANEOUS OFFENSES

In his fourth point of error, appellant contends that the trial court erred by admitting evidence of an extraneous offense in violation of TEX.R.CRIM.EVID. 404(b). Specifically, appellant complains of the following testimony by Officer Thane:

(Prosecutor) You were asked if you were familiar with Mr. Gilbert. You said "yes." How are you familiar with Mr. Gilbert?

(Thane) I've had contacts with him on other investigations that we've conducted.

(Prosecutor) That'd be narcotic related?

(Thane) They are narcotic related.

(Appellant's counsel) I'm going to object, you Honor. May we approach?

(Court) I overrule. Let's move on, Mr. Smith.

Appellant argues that the above-referenced testimony was offered to show that appellant had been involved with narcotics on other occasions, and that he acted in conformity therewith on this occasion.

Appellant failed to present either a timely or specific objection as required by TEX. R.APP.P. 52(a). Further, we find that appellant "opened the door" for such testimony by Officer Thane. On cross-examination, appellant's counsel asked Officer Thane whether he was personally familiar with appellant, to which the officer replied affirmatively. Appellant's counsel then asked Officer Thane whether he knew appellant from high school. Officer Thane replied no. Counsel then asked Officer Thane whether he had stopped appellant for traffic violations on other occasions. Officer Thane replied, "The instance I recall is not traffic related." Appellant's counsel again asked the officer whether he had stopped appellant for traffic violations, and the officer responded, "Not that I recall."

▪ On redirect examination, the prosecutor sought to clarify how Officer

Thane had become familiar with appellant. It was at this time that the officer testified that he knew appellant from previous narcotics investigations. Once a matter is injected into the proceeding, evidence to fully explain the matter is relevant and admissible, even though the evidence might not otherwise be admissible. *Parr v. State*, 557 S.W.2d 99, 102 (Tex.Crim.App.1977); *Hughes v. State*, 850 S.W.2d 260, 263 (Tex.App.—Fort Worth 1993, pet. ref'd). Because appellant raised the issue of how Officer Thane became acquainted with appellant, the State is allowed to fully explain the issue, even though the fact that appellant had been involved in other narcotics investigations would not normally be admissible.

Furthermore, there was significant other evidence presented to the jury to show that appellant had been involved with narcotics on other occasions. In fact, this case involved a two-count indictment, and a great deal of the evidence presented at trial concerned a separate arrest of appellant for a narcotics violation that allegedly occurred on January 15, 1993.

Because appellant "opened the door" to the extraneous offense testimony, and the jury was made aware of appellant's alleged involvement with narcotics from sources other than Officer Thane's testimony, and in view of the late objection, the trial court did not err.

Appellant's fourth point of error is overruled.

## REQUESTED JURY CHARGE ON AFFIRMATIVE LINKS

■ In his fifth point of error, appellant contends the trial court erred by refusing to submit the following proposed special charge:

When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.

The State argues such a charge sets forth an appellate standard of review that should

not be presented to the jury, and constitutes an improper comment on the weight of the evidence. We agree.

In *Davila v. State*, 749 S.W.2d 611, 614 (Tex.App.—Corpus Christi 1988, pet. ref'd), the defendant requested a charge that the evidence must affirmatively link her to the heroin she was charged with possessing. The court overruled appellant's contention and stated, "Affirmative links, like the reasonable hypothesis theory, is a technical legal standard of review which is not meant for use by the jury and would only lead to confusion and distraction." *Id.*

In *Gordon v. State*, 686 S.W.2d 241, 243 (Tex.Crim.App.—Houston [14th Dist.] 1985, pet. ref'd), the defendant requested a charge almost identical to the charge requested in this case. The court held that the defendant's "requested instruction singled out favorable testimony to himself and, as such, constituted a comment on the weight of the evidence." *Id.; See Smith v. State*, 708 S.W.2d 518, 521 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Therefore, we find the requested charge was properly refused.

Appellant's fifth point of error is overruled.

## REQUESTED JURY CHARGE ON ELEMENTS OF POSSESSION

In his sixth point of error, appellant contends the trial court erred by refusing to submit the following proposed special charge:

In order to establish unlawful possession of a controlled substance, the State must prove that the Defendant exercised care, control *and* management over the contraband and that the Defendant knew that the matter possessed was contraband.

(Emphasis added.)

However, the Texas Controlled Substances Act defines possession as "actual care, custody, control, *or* management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992) (emphasis added). This was the definition of possession given to the jury. At oral argument, appellant agreed that article 481.002(38) is the proper definition for possession. *See Humason v. State*, 728 S.W.2d 363, 365 n. 7 (Tex.Crim.App.1987).

Appellant's sixth point of error is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his seventh point of error, appellant contends that the evidence presented at trial was insufficient to support a conviction of the charged offense. It is well settled that in reviewing evidence sufficiency we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). Sufficiency of the evidence is a question of law. The appellate court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). If there is evidence that establishes guilt, beyond a reasonable doubt, and if the trier of fact believes the evidence, this Court cannot reverse the judgment on sufficiency of evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■■■■■ In order to establish the offense of unlawful possession of a controlled substance, the State must show 1) the accused exercised care, control, or management over the contraband, and 2) he knew that what he possessed was contraband. *Humason v. State*, 728 S.W.2d at 364. When the accused is not in exclusive control of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *Id.* at 365–66.

■■ Appellant contends that the evidence is insufficient to affirmatively link him to the cocaine seized. Factors that may establish such affirmative links include whether: 1) the contraband was in plain view; 2) the contraband was conveniently accessible to the accused; 3) the accused was the owner of the place where the contraband was found; 4) the accused was the driver of the automobile in which the contraband was found; 5) the contraband was found on the same side of the car seat as the accused was sitting; 6) the place where the contraband was found was enclosed; 7) the odor of marihuana was present; 8) paraphernalia to use the contraband was in view of or found on the accused; 9) conduct by the accused indicated a consciousness of guilt; 10) the accused has a special connection to the contraband; 11) occupants of the automobile gave conflicting statements about relevant matters; 12) the physical condition of the accused indicated recent consumption of the contraband found in the car; and 13) affirmative statements connect the accused to the contraband.[1] The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

■■ In this case, the cocaine was discovered in plain view on the seat of the vehicle, and was conveniently accessible to appellant. Appellant was the driver of the vehicle in which the contraband was found. Some of the cocaine was recovered from the passenger side of the vehicle, but several chips were also recovered from the driver's side where appellant was seated. Along with the cocaine, several single-edged razors were also recovered. Such razors are often used to cut rocks of crack cocaine. There is also evidence that appellant did not immediately stop his vehicle when alerted to do so by the officers. This furtive gesture could support an inference that appellant displayed a consciousness of his guilt, and was attempting to dispose of the contraband before pulling over. *Davila*, 749 S.W.2d at 613. Finally, there was evidence that appellant warned Richard Gilbert not to tell the police anything. This also could support an inference

1. *See Lewis v. State*, 664 S.W.2d 345, 349 (Tex. Crim.App.1984) (factors one, two, five, seven, eight, and nine); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981) (factors one through six); *Sanchez v. State*, 589 S.W.2d 422, 423 (Tex.Crim.App.1979) (factors one and eight); *Moulden v. State*, 576 S.W.2d 817, 818, 820 (Tex. Crim.App.1978) (factors seven, eight, ten, and thirteen); *Duff v. State*, 546 S.W.2d 283, 287 (Tex.Crim.App.1977) (factors one, four, six, seven and eleven); *Sanders v. State*, 482 S.W.2d 648, 651 (Tex.Crim.App.1972) (factor five); *McGaskey v. State*, 451 S.W.2d 486, 487 (Tex.Crim.App. 1970) (factor twelve).

that appellant displayed a consciousness of guilt.

We find that there is sufficient evidence, when viewed in the light most favorable to the prosecution, to affirmatively link appellant to the cocaine.

Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.