Affirmed and Opinion filed May 4, 2006















Affirmed
and Opinion filed May 4, 2006.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NO. 14-05-00754-CR

____________

 

ANTHONY
CARL THOMAS, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 



 

On Appeal from the 183rd District Court

Harris County,
Texas

Trial Court Cause No. 988,950

 



 

O P I N I O N

A jury found appellant Anthony
Carl Thomas guilty of felony possession with intent to deliver a controlled
substance, and the court sentenced him to thirty years=
confinement in the Texas Department of Criminal JusticeCInstitutional
Division.  In his sole point of error,
appellant contends that the evidence is legally insufficient to support his
conviction.  We affirm.

Background

On May 25, 2004, Officer Fred
Wood, Jr. of the Narcotics Division of the Houston Police Department received a
tip that appellant was dealing heroin in the Third Ward.  The informant provided a description of
appellant, the car he was driving, and several locations where appellant might
be.  Wood, who was not in uniform or
driving a marked vehicle, located appellant=s red
Cadillac, which matched the informant=s
description, in the parking lot of a Jack In The Box fast food restaurant.  Wood testified that he saw a black male exit
the car from the passenger=s side
and walk into the restaurant; however, the man did not match the informant=s
description of appellant.  According to
Wood, a white male then climbed into the passenger=s side of
the car and the driver pulled out of the parking lot.  Wood testified that he tried to follow the
car but lost it in traffic.

According to Wood, the Cadillac
returned to the Jack In The Box about five minutes later and the same white
male exited from the passenger=s
side.  Wood testified that the driver
then pulled out of the lot heading west on Richmond Avenue but immediately made a
U-turn.  Wood followed the car for about
ten blocks, at which point it pulled over to a sidewalk where a young black
male was standing.  Wood testified that
the young man leaned into the passenger=s side
window for several seconds and that after he walked away, the driver made
another U-turn on Richmond,
heading west past the Jack In the Box. 
Wood testified that he suspected the white male and the young black male
had bought drugs. 

Wood testified that he continued
to follow the Cadillac, which eventually parked by the front doors of a nearby
office building.  Wood saw appellant exit
the car and enter the building and testified that appellant matched the
description he had received from the informant. 
Wood also testified that after about five minutes, appellant circled the
office building in the Cadillac and then drove back to the Jack In The
Box.  According to Wood, appellant went
inside the restaurant and emerged a few minutes later accompanied by his
original passenger.  Wood testified that
both men then got into the Cadillac and appellant drove back to the office building.                                     








According to Wood, appellant
entered the office building and remained inside for about an hour, during which
time Wood observed him through an upstairs window.  Appellant=s
passenger stayed with the car but never sat in the driver=s
seat.  Wood testified that when appellant
got back in the car, he sat in the driver=s seat
and drove east on Richmond.  Wood testified that by this time, several
other narcotic officers had arrived on the scene and were tracking appellant in
unmarked vehicles or hidden marked vehicles. 
Wood testified that he asked a patrol officer in a marked car to stop
appellant based on the information he had received from the informant and the
two suspected drug transactions.

According to Wood, instead of
pulling over when the patrol officer turned on his red lights, appellant
remained in the center lane and began to drive extremely slowly.  Wood testified that he was concerned that
appellant was not going to stop and that he was observing the Cadillac at all
times.  Wood testified that the Cadillac
nearly stopped in the center lane and that he suspected the occupants might
attempt to run; ultimately, however, appellant pulled over very slowly to the
right lane.  Wood stated that he did not
see appellant make any furtive movements inside the car and that appellant was
generally cooperative.  Wood also
testified that when he questioned appellant, appellant denied that his nickname
was ADirty,@ which
contradicted what the informant and others had told Wood.  Wood also stated that appellant denied
picking up the white male and interacting with the young black male on the
sidewalk.  








While Wood was questioning
appellant, another officer arrested his passenger, Billy Washington, after
discovering that Washington
was carrying powdered heroin in a small paper bag inside his shoe.  Appellant denied knowing anything about Washington=s
contraband, and he gave his written and oral consent for officers to search the
Cadillac.  Wood=s
partner, Officer Frank Scoggins, searched the car and found a black
35-millimeter film canister in the driver=s side
door pocket.  The canister contained
seventeen plastic bags, each filled with a brown tar-like substance that tested
positive for heroin.[1]  Wood testified that he arrested appellant
after Scoggins showed him the heroin. 
Wood also testified that he found two rolls of cash, totaling $615, in
appellant=s front pants pockets.   Scoggins testified that the Cadillac was
registered to appellant and that he did not find any other contraband inside
the car.  Officer Robert Cambric of the
Houston Police Department testified that although no latent fingerprints were
found on the film canister, the plastic bags, or the paper bag, prints are
often undetectable on such surfaces. 

Appellant called Washington as a defense witnesses, but Washington invoked his Fifth Amendment right
not to testify.  Appellant did not
testify in his own defense.  The jury
found appellant guilty of possession with intent to deliver a controlled
substance, as charged in the indictment. 
Appellant pleaded Atrue@ to two
enhancement allegations, and the trial court sentenced him to thirty years=
incarceration.

Standard of Review








In evaluating the legal sufficiency of the evidence, we must
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002).  This standard of
review applies to cases involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we
consider all evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the jury.  King
v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence.   Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex.
Crim. App. 2000).

Analysis

To prove unlawful possession of a
controlled substance, the State must prove that:  (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.  Tex. Health & Safety Code Ann. '
481.002(38), 481.112(a) (Vernon 2003); Poindexter v. State, 153 S.W.3d
402, 405 (Tex.
Crim. App. 2005).  Whether this evidence
is direct or circumstantial, it must establish that the accused=s
connection with the drug was more than just fortuitous.  Poindexter, 153 S.W.3d at 405-06.  Thus, Texas
courts have formulated the rule that

[w]hen
the accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control
over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband. 

 Id. at 406
(quoting Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App.
1995)).  The purpose of this so-called Aaffirmative
links rule@ is to protect the innocent
bystander from conviction based solely upon his fortuitous proximity to someone
else=s drugs.  Id. at 406.  The
existence of an affirmative link generates a reasonable inference that the
defendant knew of the contraband=s
existence and exercised control over it. 
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).








Circumstances that may
affirmatively link a defendant to contraband include: (1) the contraband was in
plain view; (2) the contraband was conveniently accessible to the accused; (3)
the accused owned the place where the contraband was found; (4) the accused was
the driver of the automobile in which the contraband was found; (5) the
contraband was found on the same side of the car as the accused was sitting;
(6) the place where the contraband was found was enclosed; (7) paraphernalia to
use the contraband was in view of or found on the accused; (8) conduct by the
accused indicated a consciousness of guilt; (9) the accused had a special
connection to the contraband; (10) occupants of the automobile gave conflicting
statements about relevant matters; (11) affirmative statements connected the
accused to the contraband; (13) there was an odor of contraband; and (14) other
contraband was found.  Hyett v. State,
58 S.W.3d 826, 830 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d); Gilbert
v. State, 874 S.W.2d 290, 298 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).  Because each case is fact specific, the
number of factors present is not as important as the logical force to which the
factors, alone or in combination, tend to affirmatively link the defendant to
the contraband.  Gilbert, 874
S.W.2d at 298.

Appellant argues that the
evidence is legally insufficient because there is no evidence that he exercised
care, custody, control, or management of the heroin.  We disagree. 
The circumstances affirmatively link appellant to the tar heroin
because: (1) appellant owned and was driving the car in which Scoggins found
the heroin; (2) the heroin was located on the same side of the car as where
appellant had been sitting; and (3) the contraband was in an enclosed space and
was easily accessible to appellant, since it was stashed in the pocket of the
driver=s side
door.  Viewing the evidence in the light
most favorable to the verdict, we find that the jury could have found beyond a reasonable doubt that
appellant exercised control, management, or care over the heroin.  Therefore, we hold that the evidence is
legally sufficient to support appellant=s
conviction and overrule his sole point of error.  We affirm the trial court=s
judgment.

 

 

/s/        Adele Hedges

Chief Justice

 

 

Judgment
rendered and Opinion filed May 4, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 











[1]  Wood testified
that the results of a field test identified the tar-like substance as heroin,
and criminalist Raynard Cockerell of the Houston Police Department Crime
Laboratory testified that the substance was 5.9 grams of tar heroin.  Wood also stated that heroin is more commonly sold in
powder form, which is derived from the tar form by blending or grinding
it.  Wood opined that appellant likely
possessed the heroin in tar form because he had not yet had a chance to convert
it to powder.