In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00219-CR


______________________________




GREGORY LEE RUSSELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 13,613




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Gregory Lee Russell appeals from his conviction by a jury for possession with intent to
deliver over 400 grams of methamphetamine. The jury assessed punishment at seventy-eight years'
confinement, and the trial court sentenced him accordingly. (1) Russell contends the evidence is legally
and factually insufficient to support his conviction because it did not show that he was the person
operating the "lab" discovered in what he describes as his "former" residence--thus, no evidence that
he possessed, with intent to deliver, any controlled substance.

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In our review of the evidence for factual sufficiency, we view all the evidence
in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's
verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the
evidence is contrary to the verdict. Id.; see Watson v. State, No. PD-0469-03, 2006 Tex. Crim. App.
LEXIS 2040 (Tex. Crim. App. Oct. 18, 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). 

 The evidence shows that Stephanie Smith called police because a man had been outside the
house yelling for Russell. Smith was alone at the house at the time, and apparently became
frightened and called police. Once in the house, the officers saw what they believed to be a
methamphetamine "lab." They then called for additional officers. After all the officers arrived,
Russell and Crystal Keller (Russell's girlfriend or common-law wife) drove up to the house after
returning from shopping at Wal-Mart, and Russell was arrested. Officers searched the car and found
several items that were described as used to make methamphetamine. Keller gave consent to search
the house. Inside the house, officers found a substantial amount of methamphetamine and equipment
for manufacturing the drug. 

 Officers described the entire house as a "lab," with vessels and containers in every room of
the house. The house had a very strong and distinct chemical odor. The chemist testified that over
2,900 grams of substances containing methamphetamine were delivered to her for testing. Keller
testified for the State (under full immunity) that she had been living with Russell since 1998, that
they were living there on the day of the arrest, and that Russell was the only person who had anything
to do with the "lab."

 Keller acknowledged the methamphetamine substances were Russell's:

 Q. . . . Crystal, you know what methamphetamine is, don't you?

 A. Yes.

 Q. And it was in the house, wasn't it?

 A. Yes.

 Q. And it was Greg's.

 A. Yes.

Keller also testified that some of the bedroom doors were locked and only Greg could enter those
rooms. 

 Keller's testimony, read as a whole, states that they were in the process of moving from the
house (where they had lived for two years), that it was to be rented to another person, and that they
had not lived exclusively in that house for two or two and a half weeks, although they still had
personal belongings there. Keller testified that they had slept in the house for at least two nights
immediately preceding the arrest, that all of their belongings were still in the house, and that they
were in the process of borrowing a truck and trailer to move their property. 

 Russell concedes that the evidence demonstrates that a methamphetamine "lab" had been
operating in the house, but denies that the evidence shows it was his. The evidence shows there was
a large amount of methamphetamine in the house. It shows a "lab" was set up in the house to make
methamphetamine. As pointed out by counsel, Keller testified that "we" stayed at the house two
nights before the arrest, but she did not identify specifically whether she was referring to Russell or
Smith. However, immediately thereafter, Keller indicated she and Russell had left the house to go
to Wal-Mart just before the arrest. Keller also testified she had "no idea" whether the equipment was
in the house when they began moving out two or three weeks earlier. 

 The issue in this case is whether the State provided sufficient evidence for the jury to
reasonably conclude the contraband was possessed by Russell. In reviewing the sufficiency of
evidence to prove that a particular person possesses contraband, we look to the evidence of the
contraband itself and to all of the evidence surrounding that contraband that can be said to link the
defendant to the contraband.

 The "affirmative links rule" is designed to protect the innocent bystander from conviction
based solely on fortuitous proximity to someone else's drugs. This rule simply restates the
common-sense notion that a person--such as a father, son, spouse, roommate, or friend--may jointly
possess property like a house, but not necessarily jointly possess the contraband found in that house. 
Thus, the rule that "[w]hen the accused is not in exclusive possession of the place where the
substance is found, it cannot be concluded that the accused had knowledge of and control over the
contraband unless there are additional independent facts and circumstances which affirmatively link
the accused to the contraband." Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

 Recognized factors include whether: (1) the contraband was in plain view or recovered from
an enclosed place; (2) the accused was the owner of the premises or the place where the contraband
was found; (3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close proximity to the
accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other
contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the
accused; (9) the physical condition of the accused indicated recent consumption of the contraband
in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused
attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection
to the contraband; (14) the occupants of the premises gave conflicting statements about relevant
matters; (15) the accused made incriminating statements connecting himself or herself to the
contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious
area under suspicious circumstances. Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.--Corpus
Christi 2002, no pet.); Kyte v. State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana 1997, no pet.).

 There is no requisite number of "affirmative links." Rather, it is the "logical force the factors
have in establishing the elements of the offense" that is important. See generally King v. State, 895
S.W.2d 701 (Tex. Crim. App. 1995); see, e.g., Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.--Houston [1st Dist.] 1994, pet. ref'd).

 In this case, the amount was considerable: (1) A strong chemical odor was present, and the
ingredients and equipment used in a home drug "lab" were scattered all over the residence. A thirty-five-gallon drum full of matches was found there, as were containers of the chemicals necessary to
make the drug. (2) "Lab" equipment was found in a house that had been Russell's residence for two
years, and even if the evidence showed he was in the process of moving out, it is equally clear
that--at most--the moving had barely commenced. (3) Keller testified she had seen Russell with
methamphetamine in that home. (4) Numerous items used in manufacturing methamphetamine were
also found in Russell's automobile. (5) A large quantity of substances containing methamphetamine
was found in the home. (6) Both equipment and chemicals were in plain view and easily accessible
to a resident of the house. 

 Reviewed in the light most favorable to the verdict, we find that a rational jury could have
found the essential elements of the crime beyond a reasonable doubt. The evidence is legally
sufficient. We have also reviewed all the evidence in a neutral light, and we conclude the evidence
is factually sufficient.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: September 19, 2006

Date Decided: October 27, 2006


Do Not Publish

1. Possession of methamphetamine in excess of 400 grams with intent to deliver is punishable
by imprisonment for life or not more than ninety-nine years or less than fifteen years, and a fine not
to exceed $250,000.00. Tex. Health & Safety Code Ann. § 481.102(b) (Vernon Supp. 2006),
§ 481.112(a), (f) (Vernon 2003).