In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00056-CV


______________________________




OTTILLIE J. VOYER, Appellant



V.



CHERYL MAXAM, Appellee




 


On Appeal from the County Court


 Fannin County, Texas


Trial Court No. 9401




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Ottillie J. Voyer, appellant, and Cheryl Maxam, Jaye G. Holt Denker, Linda Faye Montanio,
and Don Wise, appellees, have filed with this Court an agreed motion to remand this case to the trial
court. The parties represent to this Court they have reached a full and final settlement and "move
that the case be remanded to allow the parties to proceed in the trial court to effectuate the
agreement." In accordance with the parties' motion asking us to remand the case pursuant to
Rule 42.1(a)(2)(B) of the Texas Rules of Appellate Procedure, we set aside the trial court's judgment
without regard to the merits and remand the case to the trial court for rendition of judgment in
accordance with the parties' agreement. See Tex. R. App. P. 42.1(a)(2)(B); see also Tex. R. App. P.
43.2(e).




 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 20, 2006

Date Decided: November 21, 2006



n's injury was a serious one that could have been fatal if the
weapon had pierced some vital organ. Ryan refused medically recommended hospitalization at first,
but several days later had to be hospitalized after he developed an infection as a result of the piercing
wound. The sufficiency of the evidence to support the conviction is not challenged.

 At the guilt/innocence phase of the trial, Clay testified in his own behalf and denied that he
intentionally stabbed Ryan. At one point in his direct testimony, Clay's counsel asked him:

 Q. They're suggesting that you're a violent inmate. Do you have a history of any
sort of charges of violence while you were at Telford?


 A. No, sir. I never had a case on the Telford Unit.


 Q. O. K. What about since the date of this indictment, the date of the alleged
crime, 10/27 of '99?


 A. Since 10/27/99 I have one case, I believe it was last month.


 Q. O. K. And what was that for? 


 A. Code twenty. 


 Q. Code twenty is?


 A. Sexual misconduct.


On cross-examination, the prosecutor asked Clay: 


 Q. Okay. Your attorney went into the fact that you're not a violent inmate? 


 A. No, ma'am. 


 Q. You wouldn't consider yourself a violent inmate?


 A. No, ma'am.


 Q. And you were here when Officer Davis testified about bad blood between
you and officer Ryan or bad blood between you and any other officers? 


 A. He didn't say . . . I don't recall him saying I had bad blood with any officer.


 Q. Well, he said he hadn't heard of you having any-do you have any animosity
towards the guards?


 A. No, ma'am.


 Q. You have complete respect for all the guards out there?


 A. Yes, ma'am.


 Q. Then could you explain to this jury why during the period of your
incarceration you have been written up at least twenty times . . . .


 [Defense Counsel]: Objection.


 . . . . 


 [Defense Counsel]: I believe his testimony was anything he did at Telford or
afterwards. 

 If she limits her questions to that, I have no objection.


 . . . . 


 The Court: I'm going to sustain his objection on the sexual misconduct and limit it
to his violence. 


 The State then proceeded to prove by Clay that he had previously been "written up" twice
for assaulting guards, three times for threatening and cursing guards, once for possessing a seven-inch metal rod sharpened at the end, and for possessing a shank.

 The trial court admitted the State's evidence on the grounds that Clay had "opened the door"
to evidence of his past violent nature, especially with respect to prison guards, and that the evidence
was relevant to prove Clay's intent to stab Ryan. (Clay had previously testified that, if he stabbed
Ryan, it was unintentional.) See Tex. R. Evid. 404(b).

 Clay contends that, because he limited his history of violence to only the time he was
incarcerated at the Telford Unit and thereafter, evidence of his violent nature and acts at other times
when he was incarcerated elsewhere was not admissible. We disagree.

 We do not believe that a defendant may produce evidence of his lack of violence during a
limited time period and then prohibit the State from showing his violent acts during other time
periods. If the defendant contends he has reformed and changed his violent character from previous
times, he may produce evidence of that and explain it to the jury. But to allow him to show his
history for violence or nonviolence for only an isolated time and leave the rest of his history
unrevealed would give the jury a false impression of his propensity for violence.

 Where the defendant delves into part of a subject, the State is entitled to inquire into the
whole of the matter in order to explain it or correct a false impression, even if the later evidence
might otherwise be inadmissible. Wheeler v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002);
McIlveen v. State, 559 S.W.2d 815, 822 (Tex. Crim. App. 1977); Parr v. State, 557 S.W.2d 99, 102
(Tex. Crim. App. 1977); Bermudez v. State, 504 S.W.2d 868 (Tex. Crim. App. 1974); Streff v. State,
890 S.W.2d 815, 819-20 (Tex. App.-Eastland 1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290
(Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). If a defendant selectively details his "trouble with
the law," his failure to relate other instances leaves the jury with a false impression, and cross-examination is not limited to the incidents to which he testified on direct examination. Ex parte
Carter, 621 S.W.2d 786 (Tex. Crim. App. 1981); Reese v. State, 531 S.W.2d 638 (Tex. Crim. App.
1976); Turner v. State, 4 S.W.3d 74 (Tex. App.-Waco 1999, no pet.).

 We conclude that the trial court did not abuse its discretion in allowing the State to inquire
into violent acts and threats by Clay when he was incarcerated at institutions other than the Telford
Unit.

 Additionally, the challenged evidence was admissible, as the trial court ruled, to show Clay's
intent in assaulting Ryan. Clay testified in his own behalf that he did not intend to stab Ryan, but
that it was an accident. Clay said he had the shank because he wanted the guards to see it and thus
get him an interview with some prison officers so he could discuss his safety, and when Ryan tried
to take the weapon from him, they scuffled and he must have accidently cut Ryan. Evidence of
other crimes or bad acts is admissible in order to prove motive, intent, or absence of accident or
mistake. Tex. R. Evid. 404(b). The trial court correctly admitted the evidence on this basis.

 In his second issue, Clay contends the trial court erred in refusing to allow defense counsel
to inform the jury that any sentence Clay received in this case would be served consecutively with
any sentence he was serving at the time of this trial. Clay also contends that the trial court erred in
failing to instruct the jury on the cumulating provision when the jury requested that information
during its deliberations.

 We find no error in this regard. First, Clay failed to object to the charge at the punishment
stage of the trial and never requested that the trial court give the jury an instruction on consecutive
service of any sentence. Nor did Clay object when the trial court refused to give the jury any further
instruction on the cumulation provisions of the law when it requested such information. The
omission of an unobjected-to or unrequested defensive instruction does not constitute error. Posey
v. State, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).

 Moreover, it would have been improper for the trial court to instruct the jury on the
consecutive sentencing law or to inform it of the effect such law might have on how long Clay might
serve. Levy v. State, 860 S.W.2d 211 (Tex. App.-Texarkana 1993, pet. ref'd).

For the reasons stated, we affirm the judgment of the trial court.



 William J. Cornelius

 Justice*



*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


Date Submitted: October 15, 2002 

Date Decided: March 24, 2003


Publish