

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00143-CR

_____

PAUL DAVID JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 31,664

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

After a jury found Paul David Johnson guilty of the manufacture or delivery of a controlled substance, namely methadone, in the amount of more than four grams, but less than 200 grams,[1] the trial court sentenced him to life in prison.[2] In his sole point of error on appeal, Johnson contends that the evidence was legally insufficient to show his intent to deliver the drug. We disagree and affirm the trial court's judgment of conviction.

I.      **Background**

On June 4, 2016, Frances Rylant, a patrol officer with the Quinlan Police Department, stopped a vehicle containing multiple occupants based on the vehicle's lack of a front license plate. According to Rylant, she stopped the vehicle in front of a house that was considered a "drug residence."[3] Rylant stated,

> This particular area, it has what we consider a drug resident [sic]. The sale and --
> the possession and sale of illegal narcotics and different drugs have been known to
> come from this residence in this area where the stop occurred. Our officers have
> stopped cars coming from there that had illegal items in their vehicle.

---

[1]Although the indictment and verdict form both alleged that Johnson did "possess with intent to deliver a controlled substance, to-wit: METHADONE," Section 481.112 of the Health and Safety Code, which creates the offense of "Manufacture or Delivery of" a controlled substance, states the elements of the offense as "a person commits an offense if the person knowingly manufactures, delivers, or possess with intent to deliver a controlled substance . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). Therefore, manufacture or delivery of a controlled substance includes possession with intent to deliver.

[2]Johnson's punishment was enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2017).

[3]Rylant testified that, due to her job, she was familiar with that particular area of town.

Rylant stated that she was familiar with the occupants of the vehicle as being Laura Massey,[4] Ellen VanArsdale, and Johnson, and Rylant was also aware that Massey and Johnson resided in the house where the stop had been made.[5] According to Rylant, Massey was driving the vehicle, VanArsdale was the front seat passenger, and Johnson was in the back seat on the passenger side of the vehicle.

Shortly thereafter, another officer, Deputy William Whitten, arrived at the scene and asked Johnson to exit the vehicle. For safety reasons, Whitten "patted [Johnson] down," and upon doing so, he located an unlabeled pill bottle[6] in the pocket of Johnson's pants. Johnson informed the officers that the bottle contained Seroquel,[7] that he had a prescription for the drug, and that the written prescription was located inside the home. According to Rylant, Johnson asked a friend, who had just come out of the "drug residence,"[8] to go back inside and retrieve the prescription. Rylant testified, "He brought a piece of paper that belonged to a female that we were -- that our department's familiar with, and the prescription did not match [Johnson]."

Whitten also found baggies in a pocket located behind the front passenger seat, along with a glass pipe. The pipe and the baggies contained white residue which the officers believed to have

---

[4]Rylant stated that, just a few days prior to the stop, Massey had been arrested for possessing methamphetamine.

[5]Rylant explained that, previously, she had made multiple stops of other vehicles arriving or leaving from the residence and that she personally "found" what she believed to be narcotics during those stops.

[6]Rylant said the label had been scratched off of the bottle.

[7]Subsequently, it was determined that the bottle contained ninety-nine methadone pills.

[8]Two of Johnson's friends, Adam Morales and Shane Steiger, appeared at the scene after walking down the driveway of the residence. Rylant stated that she was familiar with both of them.

3

been methamphetamine. The officers arrested Johnson for manufacture or delivery of methamphetamine.

When officers began to arrest Massey also, Johnson told Rylant that he "did not want [Massey] to get in trouble for any of the drugs." After explaining that Massey was currently attending nursing school, Johnson stated that "he wanted to take credit for the drugs that were found in the vehicle." Following a search of his person incident to arrest, Johnson was found to be in possession of $1,270.00 in cash. After determining that the pills in the bottle were methadone, Johnson was also arrested for the manufacture or delivery of a controlled substance, to wit, methadone.[9]

At trial, Warren Mitchell, an investigator for the Greenville Police Department, testified that, in his law enforcement experience, drug dealers are known to remove the labels from pill bottles in order to conceal the contraband and to make it more difficult for investigators to determine the identity of the person who sold the drugs. Mitchell stated, "I don't think ever -- I -- have I found a bottle that has the true prescription label on it." Mitchell went on to explain that it was now common for individuals to carry smaller quantities in a cellophane bag because it is easier to conceal the drugs in a bag rather than a prescription bottle.

Moreover, Mitchell stated that it is common for a "wholesale" drug dealer to carry a large quantity—ninety methadone pills—on his person. Likewise, it is common for such an individual

---

[9]Rylant stated that she arrested Johnson for manufacture or delivery of methadone because of
> [t]he drug paraphernalia that was found, the baggies, and the amount of clear substance that was found inside the baggy. Also, the amount of cash that was found rolled up, the amount of methadone pills that were in an unmarked bottle, all those factors played into why [she] charged [Johnson] with manufacturing and delivery.

4

to carry a large amount of money—$1,270.00—in cash.[10]  After hearing the evidence, the jury found Johnson guilty of the manufacture or delivery of a controlled substance, namely methadone, and assessed his punishment at life in prison.  On appeal, Johnson contends that the evidence was legally insufficient to show his intent to deliver the methadone.

## II.    Standard of Review

In evaluating legal sufficiency in this case, we must consider all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Johnson was guilty of the offense of manufacture or delivery of methadone.  *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).  We afford almost total deference to a jury's credibility determinations.  *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  An appellate court

---

[10]The $1,270.00 consisted of denominations of twenty and 100 dollar bills.  Mitchell stated that those particular denominations "would be something [he] would commonly find on a drug dealer."  According to Mitchell, the street value of a ten-milligram pill of methadone is $10.00.  Mitchell explained, "If I -- I was addicted and I had a relationship built with a dealer, you know, I would negotiate.  And then again, if I'm going to buy -- you know, I might try to talk him to four pills for 20 versus two pills for 20."

may not re-evaluate the weight and the credibility of the evidence or substitute its judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Further, circumstantial evidence is as probative as direct evidence, and it can be sufficient alone in establishing guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. "Evidence is legally insufficient when the 'only proper verdict' is acquittal." *Nelson v. State*, 405 S.W.3d 113, 122 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting *Tibbs v. Florida*, 457 U.S. 31, 41-42 (1982)).

Finally, legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## III. Discussion

An individual commits a crime in Texas if he "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." Tex. Health & Safety Code Ann. § 481.112 (West 2017); *Talley v. State*, 909 S.W.2d 233, 234 (Tex. App.—Texarkana 1995, pet. ref'd). In this case, the indictment stated that Johnson

6

[d]id then and there knowingly and intentionally possess with intent to deliver[11] a controlled substance, to-wit: METHADONE in an amount by aggregate weight, including any adulterants or dilutants, of four grams or more but less than two hundred grams[.]

Methadone is a penalty group 1 narcotic. *See* TEX. HEALTH & SAFETY CODE ANN. 481.102(4) (West Supp. 2017).

Johnson maintains that the State's evidence was tied directly to the amount of methamphetamine found in the vehicle, and not the methadone. Johnson concedes that the State may have had sufficient proof to support a conviction for possession of methadone, but, he contends it did not present sufficient evidence to prove he intended to deliver methadone. We disagree.

The State has the burden of proving that Johnson intended to deliver the methadone he possessed. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112. Intent to deliver may be established by circumstantial evidence. *Bryant v. State*, 997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no pet.) (citing *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). Expert testimony by experienced law enforcement officers may be used to show intent to deliver. *Id.* (citing *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.)). In addition, the following factors are relevant to the question of intent to deliver: (1) the nature of the place where the defendant was arrested; (2) the quantity of controlled substance possessed by the defendant; (3) the manner of packaging; (4) the presence

---

[11]The phrase "to deliver," as it is used in Article 481.112, means "to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2017).

of drug paraphernalia; (5) the defendant's possession of a large amount of cash; and (6) the defendant's status as a drug user. *Id.* at 675 (citing *Williams*, 902 S.W.2d at 506). The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

In support of his contention that Johnson was not selling methadone pills, Johnson states,

> Looking just at the evidence regarding methadone, the evidence does not rise to the level needed to prove intent to deliver. The State's witness Warren Mitchell testified that 10 milligram tablets of methadone was a standard prescription dosage. Though Mitchell testified that 90–120 methadone pills would be a "wholesale" amount of methadone for a drug dealer[,] he also stated that legal prescriptions for methadone commonly ranged from 90–120 pills. He stated that 90–120 was what doctors would prescribe to new users since a newer user would need more than someone who has been on methadone for a while. Thus, having that number of pills doesn't differentiate between whether someone is a user or a dealer.

Johnson's contention is meritless for multiple reasons, not the least of which is that there was no evidence that he had a legal prescription for the methadone pills. On the contrary, the evidence exclusively showed that he did not have such a prescription.

In addition, Johnson was arrested directly in front of a house commonly known as a drug residence, a house in which Johnson resided. At the time of his arrest, Johnson was found in possession of an unlabeled pill bottle that contained over ninety methadone pills. The quantity of pills found on Johnson's person, and the fact that they were in an unlabeled bottle, evidenced Johnson's intent to sale the methadone. Although the pills were not individually packaged, officers found several plastic baggies, as well as drug paraphernalia, inside the vehicle in close proximity to where Johnson had been sitting. There was uncontroverted testimony that plastic baggies are

commonly used in the sale and distribution of methadone pills. Additionally, Johnson was found in possession of a large amount of cash, in an amount commonly held by individuals who sell illegal narcotics.

As in every case, the jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). We defer to the jury's determination and assume any conflicting evidence or inferences were resolved in favor of the guilty verdict and, thus, find there was sufficient evidence to support the jury's verdict of guilt.

We overrule Johnson's sole point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     February 13, 2018
Date Decided:       March 7, 2018

Do Not Publish