
FILED
October 15, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00112-CR
7259864
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/6/2015 6:19:07 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00112-CR**

## IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/6/2015 6:19:07 PM
JEFFREY D. KYLE
Clerk

MATTHEW JARRETT LEE, Appellant

v.

THE STATE OF TEXAS, Appellee

On Appeal from County Court at Law, #2, Comal County, Texas
Cause No. 2014CR0532
The Honorable Charles A. Stephens, II, Presiding Judge

### BRIEF FOR THE STATE

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Melroy Koehler**
SBN: 24003663
Chief Misdemeanor Prosecutor
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
Phone: (830) 221-1300
Fax: (830) 608-2008
E-mail: koehlm@co.comal.tx.us
Attorney for the State & Supervising Attorney

**Scott Walther**
Associate Member Number: 24096091
E-mail: walt1274@gmail.com

**Oral Argument Is Not Requested**

i

## Identity of Parties and Counsel

**Attorneys for the Appellant Matthew Jarrett Lee**

**AT TRIAL**
Michael Zamora
SBN:24008327
211 Babcock Rd.
San Antonio, TX  78201

**ON WRIT & APPEAL OF WRIT DENIAL**
Frank B. Suhr
SBN: 19466300
473 S. Seguin Ave., Suite 100
New Braunfels, TX  78130
Email:  fsuhr@newbraunfelslaw.com

**Attorneys for the Appellee, The State of Texas**

**AT TRIAL**

| | |
|---|---|
| Ryan Vickers, SBN: 24079518 | Abigail Whitaker,  SBN: 24051915 |
| Assistant District Attorney | Assistant District Attorney |
| vicker@co.comal.tx.us | whitta@co.comal.tx.us |

**ON WRIT & APPEAL OF WRIT DENIAL**
Melroy Koehler
SBN: 24003663
Chief Misdemeanor Prosecutor
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: koehlm@co.comal.tx.us

Scott Walther
Associate Member Number: 24096091
Email: walt1274@gmail.com

# Table of Contents

Index of Authorities ...........................................................................................iv

Statement of the Case..........................................................................................1

Issues Presented ..................................................................................................1

Statement of Facts ...............................................................................................1

*Legal Sufficiency of the Evidence Standard of Review*............................................4

**There Was Sufficient Evidence to Support the Jury's Finding of Appellant's Guilt for the Offense of Possession of Marijuana**..................................................6

    *Summary of the Argument* ..........................................................................6

    **A. The Evidence Was Sufficient to Show Appellant Possessed the Marijuana** ...................................................................................................7

    **B. Texas Case Law Demonstrates the Factors in Appellant's Case Were Sufficient for a Reasonable Jury to Find Appellant Guilty**.....................17

    **Conclusion** ............................................................................................22

Prayer .................................................................................................................25

Certificate of Service .........................................................................................26

Certificate of Compliance ..................................................................................26

# Index of Authorities

## Statutes, Rules & Secondary Sources

Tex. Health & Safety Code Ann.
§ 481.002(38) (West, Westlaw through
2015 Sess.) ...........................................................................................................7

Tex. Health & Safety Code Ann.
§ 481.121 (West, Westlaw through 2015
Sess.) .....................................................................................................................7

## Cases

*Allen v. State*, 249 S.W.3d 680 (Tex. App.
—Austin [3rd Dist.] 2011, no pet.)...............................................................7, 17, 18

*Brown v. State*, 649 S.W.2d 160
 (Tex. App.—Austin 1983, no pet.) ........................................................................5

*Cortez v. State*, 08-02-00363-CR, 2004
WL 178587 (Tex. App.—El Paso Jan.
29, 2004, pet. ref'd) (not designated for
publication) ...........................................................................................................6

*Evans v. State*, 202 S.W.3d 158 (Tex.
Crim. App. 2006) ...........................................................................7, 8, 9, 13, 23

*Ferguson v. State*, 313 S.W.3d 419 (Tex.
App.—Houston 2009, pet. denied) .....................................................8, 9, 13, 20, 21

*Gant v. State*, 116 S.W.3d 124 (Tex. App.
—Tyler [12th Dist.] 2003, pet. denied) ...........................................................9, 23

*Gilbert v. State*, 874 S.W.2d 290 (Tex.
App.—Houston 1994, writ denied).................................................................9, 13

*Glass v. State*, 681 S.W.2d 599 (Tex.
Crim. App. 1984) ..............................................................................12, 13, 15

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007)................................................................8

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................................4, 14, 16, 22

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App. —Houston [1st Dist.] 2011, pet. ref'd)................................................4, 22

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000), abrogated on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009)................................................5

*Olivarez v. State*, 171 S.W.3d 283 (Tex. App.—Houston [14th Dist.] 2005, no pet.)................................................8

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)................................................8, 12

*Randle v. State*, 04-14-00065-CR, 2015 WL 1640306 (Tex. App.—San Antonio Apr. 8, 2015, no pet.) (not designated for publication) ................................................10, 20, 21, 22

*Roberson v. State*, 16 S.W.3d 156 (Tex. App.—Austin 2000, pet. ref'd)................................................5

*Rockwell v. State*, AP-76,737, 2013 WL 6529575 (Tex. Crim. App. Dec. 11, 2013) (not designated for publication)................................................6

*Whitworth v. State*, 808 S.W.2d 566 (Tex. App.—Austin 1991, pet. ref'd)................................................23

*Williams v. State*, 03-08-00684-CR, 2010 WL 2788819, at *1 (Tex. App. —Austin July 14, 2010, no pet.) (mem. op.) (not designated for publication)................................................17, 19, 20

## Statement of the Case

Appellant was charged by information with the Class B misdemeanor offense of possession of marijuana (C.R. at 12). Appellant elected to have a trial by jury as to his guilt/innocence (I R.R. at 1). The jury found him guilty of the misdemeanor offense (C.R. at 46). The trial court assessed punishment at 90 days confinement in county jail, probated for 12 months, a $1,000 fine ($750 of which was probated), court costs (C.R. at 52), a six-month driver's license suspension (C.R. at 54) and imposed other standard conditions of probation (C.R. at 62).

## Issue Presented

Whether there was sufficient evidence to support the jury's finding of Appellant's guilt of the offense of possession of marijuana.

## Statement of Facts

On December 8, 2013, Matthew Jarrett Lee (hereinafter referred to as "Appellant") was a passenger in a vehicle heading southbound on IH 35 through Comal County, Texas (II R.R. at 20-22). A two officer Sheriff's patrol unit stopped the vehicle Appellant was riding in for an obstructed/expired temporary dealer's license plate (II R.R. at 19-20). The officers of this patrol unit were Deputies Guillermo Cano and Robert Huerta (hereinafter referred to as "Deputy Cano" and "Deputy Huerta" respectively or "deputies" jointly) (II R.R. at 3-4, 15, 64). The

1

video of the subsequent stop and search was introduced into evidence (State's Ex. 4[1]).

The vehicle was occupied by four people (II R.R. at 21-22). A male, who owned the car, occupied the driver's seat (hereinafter referred to as "Driver") (II R.R. at 21, 56, 74). A female passenger (hereinafter referred to as "Passenger") occupied the front passenger seat (II R.R. at 21, 56, 74). A three- or four-month-old infant (hereinafter referred to as "Baby"), the child of the female passenger, occupied the back seat directly behind the female passenger (II R.R. at 21-22, 74). Appellant occupied the backseat directly behind the driver's seat (II R.R. at 21-22, 74).

During the initial stage of the stop, Deputy Huerta had the Driver exit the vehicle in order to speak with him (II R.R. at 73-75; State's Ex. 4 at 2:09). Later, upon noticing that Appellant was not wearing his safety belt (II R.R. at 39, 75; State's Ex. 4 at 2:09), Deputy Huerta had Appellant exit the vehicle and sit on the ground near the front of the vehicle (II R.R. at 39, 85; State's Ex. 4 at 8:56). Appellant was acting overly nervous around the officers, continually repeated that he "[didn't] want no trouble" and that he was "just along for the ride" without being prompted to by the deputies, and had bloodshot eyes (II R.R. at 22-23, 26-

---

[1] References to the videos introduced into evidence, State's Exhibit 4 (dash camera) and State's Exhibit 5 (backseat of patrol camera), will be cited to an approximate minute : second reference like so: State's Ex. 4 at 2:09.

27, 48, 75-78, 100, 144; State's Ex. 4 at 6:25-7:50, 8:30-8:50). The other two adult occupants of the vehicle were noticeably calm and collected throughout the entire transaction (II R.R. at 75, 78, 99-100, 121).

Passenger was allowed to briefly remain with her infant in the car until the Driver gave consent to the deputies to search the vehicle (II R.R. at 27, 50-51, 78-80; State's Ex. 4 at 8:00-10:50). During the period of time that the Passenger was in the front seat of the car, she was never out of the field of vision of either one of the deputies (State's Ex. 4 at 8:00-10:50). Upon receiving consent, the deputies first searched the driver's area (II R.R. at 80; Ex. 4 at 12:20-12:25). When they found nothing, they searched the front passenger area, the Passenger, and then searched the Baby and the rear passenger area of the car (II R.R. at 80-81; Ex. 4 at 13:00, 17:58-18:28). Contraband in the form of marijuana was found on the rear passenger floorboard below the infant carrier (II R.R. at 82-83; Ex. 4 at 18:28). The marijuana was found closest to, and within arm's reach of, Appellant (II R.R. at 60, 86-87).

The deputies concluded, based on Appellant's presence during the search, proximity to the marijuana, his overly nervous behavior, his unprompted statements of "I don't want no trouble" and "I'm just along for the ride," his visible shaking and his bloodshot eyes that the marijuana was linked to the Appellant (II

3

R.R. at 43-44, 55, 98-99, 109, 120, 126). Appellant was then arrested for the Class B misdemeanor offense of possession of marijuana.

Appellant elected try his case to a jury. The jury subsequently found him guilty and the trial court assessed punishment of a probated sentence.

### *Legal Sufficiency of the Evidence Standard of Review*

Texas appellate courts review legal and factual sufficiency challenges in criminal cases using the same legal sufficiency standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Ervin v. State,* 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Evidence is only insufficient if, when considering all the evidence in the light most favorable to the verdict, "no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *Id*.[2] (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Ultimately, the reviewing court is not to determine "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

[2] When viewing the evidence in the light most favorable to the verdict, evidence can be insufficient in two circumstances: when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" **or** when "the evidence conclusively establishes a reasonable doubt." *Id*. The evidence may also be insufficient when the acts alleged do not constitute the offense charged. *Id*. at 108.

4

reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). Accordingly, "the verdict will be sustained if there is any evidence which, if believed, shows the guilt of the accused." *Brown v. State*, 649 S.W.2d 160, 163 (Tex. App.—Austin 1983, no pet.). Legal sufficiency review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Reviewing courts determine whether the necessary inferences are reasonable based on the "combined and cumulative force of the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108.

Appellate courts will presume that the factfinder "resolved any conflicting inferences in favor of the verdict" and defer to that resolution. *Id*. The reviewing courts will also defer to "the factfinder's evaluation of the credibility and the weight of the evidence." *Id*. The factfinder is entitled to accept some testimony and reject other testimony, in whole or in part. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), abrogated on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009); *see also Roberson v. State*, 16 S.W.3d 156, 164 (Tex. App.—Austin 2000, pet. ref'd) (factfinder may accept or reject any or all evidence presented by either party).

5

Courts will treat direct and circumstantial evidence equally. *Kiffe*, 361 S.W.3d at 108. "[D]irect evidence of a fact, standing alone and if believed by the jury, is always… sufficient to prove that fact." *Cortez v. State*, 08-02-00363-CR, 2004 WL 178587, at *3 (Tex. App.—El Paso Jan. 29, 2004, pet. ref'd) (not designated for publication) (citing *Goodman v. State*, 66 S.W.3d 283, 286 (Tex. Crim. App. 2001). Furthermore, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Rockwell v. State*, AP-76,737, 2013 WL 6529575, at *1 (Tex. Crim. App. Dec. 11, 2013) (not designated for publication) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)), *cert. denied,* 134 S. Ct. 2724 (2014). The sufficiency of the evidence is determined from the *cumulative effect of all* the evidence; each fact in isolation need not establish the guilt of the accused. *Roberson*, 16 S.W.3d at 164 (emphasis added).

## There Was Sufficient Evidence to Support the Jury's Finding of Appellant's Guilt of the Offense of Possession of Marijuana

### *Summary of the Argument*

There was sufficient evidence to support the jury's guilty verdict in the underlying case. Appellant was linked to the marijuana through several factors: Appellant was closest to the marijuana which was in plain view, Appellant appeared overly nervous around the deputies, and Appellant had bloodshot, glassy

eyes consistent with marijuana use. When viewed in their totality, the circumstances and evidence in this case clearly allowed a rational trier of fact to reasonably infer that Appellant exercised custody, control, care, or management of the marijuana. Therefore, this Court should affirm the judgment of the trial court.

**A.    The Evidence Was Sufficient to Show Appellant Possessed the Marijuana.**

Appellant was charged by information with the Class B misdemeanor offense of Possession of Marijuana, under two ounces,  "on or about 8th day of December, 2013, in the County of Comal and State of Texas" (CR 12). *See* Tex. Health & Safety Code Ann. § 481.121 (West, Westlaw through 2015 Sess.).  In possession of controlled substances cases, the State must prove that the accused had actual care, custody, control, or management over the substance and that the accused knew that the substance was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* Tex. Health & Safety Code Ann. § 481.002(38) (West, Westlaw through 2015 Sess.).  "Possession is a voluntary act if the possessor obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Allen v. State*, 249 S.W.3d 680, 689-90 (Tex. App.—Austin [3rd Dist.] 2011, no pet.), *citing* Tex. Penal Code Ann. (West 2003) § 6.01(b).

When actual care, custody, control, or management cannot be proven, then the State must show there are additional independent facts and circumstances connecting or linking the accused to the knowing possession or constructive possession of contraband. *Ferguson v. State*, 313 S.W.3d 419, 423 (Tex. App.— Houston 2009, pet. denied) citing *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005). Circumstantial and direct evidence are both equally probative in showing these affirmative links. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The Texas Court of Criminal Appeals has observed a non-exclusive list of fourteen factors which Texas courts have recognized may be sufficient to link an accused to contraband in order to establish a person's knowing possession.[3] *Evans*, 202 S.W.3d at 162 n. 12, *citing Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). These factors may be sufficient *singly or in combination* with one another. *Evans*, 202 S.W.3d at 162 n. 12 (emphasis

---

[3] (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view; (3) the defendant's proximity to and accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n. 12.

8

added). Additionally, it should be noted that these factors do not all need to exist because it is the logical force, not the sheer number, of the factors that is significant. *Evans*, 202 S.W.3d at 162; *see also Gant v. State*, 116 S.W.3d 124, 131 (Tex. App.—Tyler [12th Dist.] 2003, pet. denied); *Gilbert v. State*, 874 S.W.2d 290 (Tex. App.—Houston 1994, writ denied) *citing Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). Furthermore, the absence of any *Evans* factors does not weigh against the factors that are present. *Ferguson v. State*, 313 S.W.3d 419, 426; *see also Evans v. State*, 202 S.W.3d 158, 162.

Appellant was the only principal to the crime due to the logical force of several of the linking factors found in *Evans v. State* including: being present during the search, his proximity to the drugs, his bloodshot eyes, and his being overly nervous. It is undisputed that the Appellant was present during the search of the car, but the other linking factors will be addressed below.

### 1. Appellant Was Closest to the Marijuana, Which Was in Plain View.

Appellant argues that Passenger, who was located in the car while Appellant and Driver were removed, could have dropped the marijuana in the area where it was found. However, both deputies testified that as police officers, they were trained to watch several different people at once in order to prevent threats (II R.R. at 25-26, 117). Also, the Driver left the vehicle before the Appellant (II R.R. at 74-

75). The Passenger was watched constantly, throughout the traffic stop (II R.R. at 117). During the period of time that Appellant stated that the Passenger was alone in the car in the front seat, she was never out of the deputies' fields of vision (State's Ex. 4 at 8:00 – 10:50). The deputies testified that she made no movements towards the back seat or even her child (II R.R. at 26). Furthermore, throughout the events of December 8, 2013, the Appellant never mentioned that the drugs were the Driver's or the Passenger's or that either one of them planted them on the backseat floorboard.

In both *Ferguson v. State* and *Randle v. State*, the drugs were found in close and convenient proximity to the respective appellants. *Ferguson*, 313 S.W.3d at 421; *Randle*, 04-14-00065-CR, 2015 WL 1640306, at *4 (Tex. App.—San Antonio Apr. 8, 2015, no pet.) (not designated for publication). In this case, it is undisputed that the Appellant had the easiest access to the drugs that were in his "plain view" in the backseat. While mere proximity cannot be sufficient to uphold a verdict, there are several other *Evans* affirmative links that are present in this case just as in *Ferguson* and *Randle*. Appellant's proximity to – and plain view of – the marijuana in this case are only some of the multiple affirmative links that connect Appellant to the care, custody, control, or management of the marijuana.

### 2. *Appellant Displayed Symptoms of Marijuana Use.*

Of the three adult occupants, Appellant was the only one who exhibited any sign of being under the influence of drugs. Officers observed Appellant's bloodshot eyes and Deputy Huerta observed Appellant visibly and noticeably shaking throughout his interaction with the Appellant (II R.R. at 41-42, 55, 77, 99, 109, 121). Deputy Huerta consistently maintained that Appellant's eyes were bloodshot, even under cross examination. Appellant argues that Deputy Huerta admitted that "you cannot really tell if [Appellant's] eyes are bloodshot." Brief for Appellant at 12. However, Deputy Huerta's so called "admission" is as follows:

Q: Can you distinguish that on the video?

A: Kind of, but not really.

Q: So your testimony is you could ascertain they were red bloodshot in person, but it's not that obvious on the video?

A: If you play the video a little more.

Q: That is an unobstructed view of his eyes?

A: Yes sir, they look red bloodshot to me.

(II R.R. 121). The "admission" that Appellant's bloodshot eyes were not captured on a certain part of the video was clarified when the defense counsel showed Deputy Huerta a different – and unobstructed – video of Appellant's eyes. The Appellant was also shown to have bloodshot or glassy eyes in the backseat video (State's Ex. 5, 43:44, 45:50, 48:40).

11

It should be noted that this evidence was played before the jury. Appellate courts in Texas recognize that the trier of fact (jury) is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter v. State*, 153 S.W.3d 402, 406. This was also only one of the affirmative links that the jury used in order to determine that the Appellant was guilty, and this Court should look to the logical force of all of the links in their totality. *See Evans v. State*, 202 S.W.3d 158, 162.

### 3.   *Appellant Was the Only Occupant Who Appeared Overly Nervous.*

Throughout the events of December 8, 2013, Appellant acted overly nervous. Acting nervous around police is not a crime, as the deputies admitted (II R.R. 122). However, Appellant's behavior was anything but the "natural impulse" of nervousness alluded to by Appellant. *Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984). Deputies Cano and Huerta both testified that Appellant was overly nervous throughout the events of December 8, 2013 (II R.R. at 22-23, 41-42, 48-49, 51, 55, 57, 75-76, 77-78, 84, 98; State's Ex. 4 at 9:25 – 10:00).

First, in their interactions with the Appellant, the deputies testified that the Appellant would persistently claim that he "[didn't] want no trouble" and that he was "just along for the ride" (II R.R. 75-78, 100, 144; Ex. 4 at 6:25 – 7:50, 8:30 – 8:50). Appellant made these statements repeatedly, and without prompting by the

deputies (II R.R. at 76). Second, Deputy Huerta testified that Appellant was shaking all over his body, especially his hands and thighs (II R.R. at 78). Third, once the Appellant left the car and was seated on a nearby curb, he requested and was encouraged to smoke a cigarette because of his noticeable "overly nervous" behavior (State's Ex. 4 at 10:25). Finally, the deputies state that during the early portion of the traffic stop, Appellant was "adamant" about leaving the car (State's Ex. 4 at 4:30). The behavior exhibited by the Appellant and observed by the deputies rises above the "natural impulse" of nervousness presented by the Appellant and showed a consciousness of guilt. *Glass v. State*, 681 S.W.2d 599, 602.

### 4. The Absence of Particular Links Sometimes Present in Other Cases Is Not Dispositive.

Appellant lists several linking factors in *Evans* that were absent in the instant case, but "it is well established that the absence of certain links do not weigh against those that are present." *Ferguson v. State*, 313 S.W.3d 419, 426; *Evans v. State*, 202 S.W.3d at 162; *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). Appellant incorrectly characterizes "a logical force" of the absence of linking factors being dispositive. Brief for Appellant at 15-16. Rather, it is the logical force of the links that *do* exist that is dispositive. *Gilbert v. State*, 874 S.W.2d at 298; *Olivarez v. State*, 171 S.W.3d at 291.

13

### 5. The Jury Rejected the Alleged "Links" to the Driver.

Appellant tried to argue that there were more affirmative links connecting the Driver to the marijuana than the Appellant. Driver did own and operate the vehicle (II R.R. at 56). This is not sufficient to amount to conclusive evidence of reasonable doubt as it only proves that Driver was indeed the owner and operator of the vehicle. *See Jackson v. Virginia*, 443 U.S. 307, 314, 318 n.11, 320.

Next, Appellant mentions that Driver took evasive action to avoid getting in front of the deputies (II R.R. at 71). Deputy Huerta also testified that it was normal for any driver to behave the same way when police officers are on the road (II R.R. at 72). Also, when asked if the driving behavior of the Driver was suspicious, Deputy Huerta responded that it was just "human nature" to engage in what he called the "parade factor" of maintaining whatever speed necessary to stay behind police officers (II R.R. at 72).

The Appellant then mentions that the Driver was on probation for a drug offense (II R.R. at 125). When cross-examined by defense counsel, Deputy Huerta testified that being on probation is a good motivator to stay away from drugs period (II R.R. at 125-26). It would logically follow that if the Driver was indeed the possessor of the marijuana, then he would be overly nervous around police officers and would not likely consent to a search of his vehicle. Instead, he was calm throughout the entire transaction prior to the drugs being discovered; he did

14

not hide the fact that he was on probation from the deputies, and readily consented to a search of his vehicle (II R.R. at 57, 75, 98-99, 100; State's Ex. 4 at 12:20 – 12:25). In fact, Appellant was the only person who was overly nervous throughout the stop (II R.R. at 22-23, 41-42, 48-49, 51, 55, 57, 75-76, 77-78, 84, 98).

Finally, Appellant mentions that the Driver became upset once the marijuana was discovered by the deputies. Appellant claims that Driver was so upset that the deputies had to calm him down. Brief for Appellant at 16. However, the video does not support this claim (*see* State's Ex. 4 at 23:10 – 23:45). The Driver does not act nor sound overly upset. Appellant cites *Glass v. State* regarding the normal tendency to be nervous during a police encounter. *Glass v. State*, 681 S.W.2d 599, 602. Just as it is normal to be nervous to some extent around police officers, it is also normal to become upset after unknown drugs are found in your vehicle. Accordingly, the typical reaction of the Driver to the discovery of the marijuana is insufficient to compel a conclusion that the logical force of the evidence implicates the Driver more than the Appellant.

Any links to the Driver are refutable and do not conclusively establish reasonable doubt. Because they are refutable, the jury reasonably determined in its evaluation of the weight and credibility of the evidence that the alleged "links" to the Driver were insignificant.

### 6. *In Addition to Appellant's Proximity, Officers Relied on Several Other Factors to Make the Arrest.*

The arresting officer, Deputy Huerta, stated that he arrested the Appellant based on the totality of the circumstances (II R.R. at 98-99, 109, 143-144). These circumstances included: the Appellant was present when the search was conducted, he was the only adult within very easy reach of the marijuana, the Appellant was the only individual that was overly nervous throughout the encounter, he was very adamant about leaving the car (State's Ex. 4 at 4:30), he had bloodshot eyes, he was shaking all over his body, especially his hands and thighs, and no other adult occupant of the vehicle exhibited similar behavior (II R.R. at 98-99).

Several of these circumstances are not disputed by the Appellant, and it is clear that the facts of this case do not support the Appellant's assertion that mere "proximity" constituted the entirety of the basis for the arrest. Instead, the facts support the conclusion that proximity to the marijuana was one of *several* facts which led to the Appellant's arrest for possession of marijuana. Ultimately, it is for the jury to decide how to weigh evidence, testimony, and resolve factual conflicts. Appellate courts defer to those determinations to avoid replacing the jury's verdict with their own judgments. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). When the totality of the circumstances is viewed in the light most favorable to the judgment, the jury reasonably concluded that the Appellant was guilty based on all of the linking factors that existed.

**B.** **Texas Case Law Demonstrates the Factors in Appellant's Case Were Sufficient for a Reasonable Jury to Find Appellant Guilty.**

Appellant believes that the *Allen v. State* case and *Williams v. State*, are instructive as to the disposition of the current case. *See Allen*, 249 S.W.3d at 683; *Williams*, 03-08-00684-CR, 2010 WL 2788819, at *1 (Tex. App.—Austin July 14, 2010, no pet.) (mem. op.) (not designated for publication). However, several facts which were noticeably absent in *Allen* are present in Appellant's case. *Williams* also provides for a sharp contrast with Appellant's case. Both *Allen* and *Williams* actually lend support the State's position.

In *Allen v. State*, this Court dealt with a possession case where drugs were found in an apartment. *Allen*, 249 S.W.3d at 684. Allen and two children were the only occupants at the time that police executed a search warrant. *Id*. Allen was the child's babysitter and was only in the apartment a few hours a week. *Id*. Allen was found with a recently smoked marijuana roach within easy reaching distance. *Id*. at 684-85.

It should be noted that *Allen v. State* pertained to knowing possession of all of the **cocaine** within the apartment. The Court found that Allen did not have knowing possession of cocaine and paraphernalia under the kitchen sink, in a dog food bag, or on a ceramic platter located in the kitchen. *Id*. at 684-85. Most of the cocaine, this Court reasoned, was located in areas that were enclosed, secreted, and not in the "plain view" of Allen. *Id*. at 694-96. By contrast, the marijuana in

Appellant's case was located in plain view on the floor in the rear passenger side of the car (II R.R. at 82-83).

In *Allen v. State*, the State attempted to rely primarily upon the proximity of Allen to the cocaine. *Allen v. State*, 249 S.W.3d at 694-96. However, in a multi-room apartment which did not belong to the appellant, it is difficult to successfully argue that an accused has knowledge of drugs in other rooms, especially when those drugs are hidden, enclosed, and secreted. *Id*. at 694-96. In Appellant's case, it is undeniable that the Appellant was the closest to the marijuana found in the vehicle, which was visible and within arms' reach (II R.R. at 86-87). Moreover, Deputy Cano testified that he did not observe the Passenger make any movements as if she was trying to conceal something, despite the fact that he kept an eye on the Passenger "the whole time" (*id*. at 25).

Allen was not found to have exhibited any consciousness of guilt. *Allen*, 249 S.W.3d at 702. Conversely, Appellant was "overly nervous" and continuously stated (without prompting from the deputies) that he "[didn't] want no trouble" and that he was "just along for the ride" (II R.R. at 75-78, 84).

Allen was not under the influence of cocaine, the drug in question in that case. *Allen*, 249 S.W.3d at 698. However, in Appellant's case, the deputies testified that they observed the symptoms of marijuana use – including "glassy" and "[b]loodshot eyes" – in Appellant during the stop (II R.R. at 26, 41, 54).

18

The unpublished case *Williams v. State* is also readily distinguishable from Appellant's case. In *Williams*, officers went to the appellant's house to arrest her on a child-custody charge. *Williams*, 2010 WL 2788819 at *1. At the time, the appellant's brother John – who the appellant knew to be a drug dealer, and who sometimes lived with the appellant – was also in her apartment with his girlfriend. *Id*. at *2. When the police attempted to arrest John on an outstanding warrant, he struggled with them. *Id*. at *1. Officers tased him and wrestled John to the ground. *Id*. When officers handcuffed John and lifted him off the floor, they found a baggie of cocaine with a Batman logo sticker on it. *Id*. Officers had not observed the baggie on the floor before struggling with John. *Id*. n.4. Officers then found additional baggie of cocaine with Batman stickers in an unlocked living-room closet, along with $1,600 in cash in John's wallet. *See id*. at *1.

In finding the evidence in that case to be legally insufficient to show John's *sister* knowingly exercised control over the drugs, the Court observed that the mere fact the appellant rented the apartment was not enough to suggest she possessed the drugs in the closet – particularly when John and his girlfriend were also in the apartment.[4] *Id*. at *5. The Court explicitly noted that "[i]t is also significant that the drugs were not in plain view, but rather were stashed in a closed closet." *Id*.

---

[4] The appellant's uncontroverted testimony in *Williams* also indicated that her brother John and his girlfriend had initially slept in her living room the night before, while appellant slept in her bedroom. *Id*. at *2, *7.

Although the State tried to argue that the appellant "must have" known John was high, the Court observed that such a fact would have no bearing on whether she knew about drugs in her closet. *Id*. at *6.

While the linking facts in *Williams* indicated the appellant's *brother* had possessed the drugs, in the instant case, the facts support that *Appellant* knowingly possessed the marijuana. *See supra* (at 1-3, 9-17). Appellant was closest to the marijuana, which was within arms' reach. It was also "significant" that the drugs were in Appellant's plain view. *See Williams*, 2010 WL 2788819 at *5. And unlike *Williams*, the fact that officers could observe that *Appellant* was high was further evidence linking him to the Marijuana. The facts in Appellant's case are vastly different – and much stronger – than those presented in *Allen* and *Williams*.

The cases in *Ferguson v. State* and *Randle v. State* are much more on point with the facts of Appellant's case. *See Ferguson*, 313 S.W.3d 419; *Randle*, 2015 WL 1640306, at *1. The application of law to facts in these cases are more instructive than either *Allen* or *Williams*.

In *Ferguson*, the appellant was in a vehicle with two other individuals. 313 S.W.3d at 421. The appellant was found alone in the backseat where the drugs were also found. *Id*. The appellant and the other occupants were "extremely nervous" and "fidgety." *Id*. The vehicle was searched based on the behavior of the occupants and the drugs were found in the same area of the van as the appellant.

20

*Id*. The Court in *Ferguson* determined that mere proximity was not necessarily sufficient to determine guilt, but, if additional *Evans* affirmative links were found along with proximity, then it could be sufficient. *Id*. at 424. The Court in *Ferguson* observed that the appellant: was present when the van was searched, exhibited behavior that indicated a consciousness of guilt, was found in close proximity to the drugs and that they were within convenient reach, and that he appeared to be under the influence when arrested. *Id*. at 426. The location where the drugs were found was also enclosed. *Id*. All of these listed factors were also present in Appellant's case. Whereas in *Ferguson,* the police also discovered drug paraphernalia in addition to the drugs themselves, in Appellant's case, the marijuana was located in plain view of the Appellant. *Compare with id*. at 427 (drugs were hidden under a pile of clothes). The totality of the facts in Appellant's case is stronger than that found sufficient in *Ferguson*.

In *Randle*, the appellant was found in a van with several other occupants. 2015 WL 1640306 at *1. A detective pulled the van over because the driver and front passenger were not wearing their seatbelts. *Id*. at *2. The detective conducted a search of the van and found a bag of marijuana underneath the appellant's seat. *Id*. at *3. He initially detained the appellant and the driver, but eventually arrested only the appellant and not the driver because there "was nothing to arrest him [driver] on." *Id*.

21

The appellant in *Randle* argued that the State only proved that the drugs were in "mere proximity" to the appellant and nothing more. *Id*. at *4. The Court in *Randle* observed that the State proved several of the *Evans* affirmative links; among others, the fact that that the appellant was present during the search of the van, had the easiest access to the marijuana because it was beneath his seat, and that the marijuana was in his "plain view" were significant. *Id*. These affirmative links listed were also present in the instant case. If anything, in Appellant's case, the marijuana was more visible lying in the floorboard. Additionally, Appellant exhibited consciousness of guilt through his nervous actions as well as symptoms of marijuana use.

### Conclusion

The burden is on the Appellant to show that "*no* rational trier of fact" could have found the Appellant guilty. *Kiffe v. State,* 361 S.W.3d 104, at 107 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))(emphasis added). Although Appellant attempts to rely on *Allen* and *Williams*, the notable absence of several factors in those cases – in sharp contrast to the distinct facts in Appellant's case – ultimately lends support to the State's position. Furthermore, the facts in Appellant's case exceeded those found sufficient in the more pertinent cases of *Ferguson* and *Randle*.

22

Appellant incorrectly claims that mere proximity to the marijuana was the only affirmative link that led to his arrest. Brief for Appellant at 17. Contrary to Appellant's assertion, there were several additional factors in his case. The marijuana was in Appellant's plain, unobstructed view. He was the *only* adult who was overly nervous throughout the events on December 8, 2013 (II R.R. at 22-23, 41-42, 48-49, 51, 55, 57, 75-76, 77-78, 84, 98). He continuously stated that he "[didn't] want no trouble" and was just "along for the ride" without ever being prompted by the deputies (II R.R. at 75-78, 100, 144; State's Ex. 4 at 6:25 – 8:50). He was visibly shaking all over his body and he never claimed a medical condition that would explain it (II R.R. at 78). Appellant also exhibited glassy, bloodshot eyes, which deputies testified were hallmarks of marijuana use.

It has been consistently found by courts in Texas that the logical force of affirmative links between evidence and actors is more important in possession cases than the raw number of links that exist. *Evans v. State*, 202 S.W.3d at 162; *see also Gant v. State*, 116 S.W.3d at 131; *Gilbert v. State*, 874 S.W.2d 290 *citing Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). The Court of Criminal Appeals has also stated that the affirmative links may be sufficient "*singly or in combination*" with each other. *Evans*, 202 S.W.3d at 162 n. 12 (emphasis added).

Viewing all of the evidence, testimony, and linking factors in the light most favorable to the State, the logical force of the evidence and reasonable inferences derived from the evidence allowed a rational trier of fact to determine that Appellant exercised care, custody, control, or management of the marijuana and that he knew that it was contraband. *See Evans*, 202 S.W.3d at 162. Because – when viewing the evidence in the light most favorable to the verdict – it cannot be said that "*no* rational factfinder" could have found Appellant guilty, the Court should affirm the judgment of the trial court in this case. *See Kiffe*, 361 S.W.3d at 107 (emphasis added).

## **Prayer**

Wherefore, premises considered, Appellee respectfully prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case.

JENNIFER THARP
Criminal District Attorney

By

/s/ Melroy Koehler
**Melroy Koehler**
SBN: 24003663
Chief Misdemeanor Prosecutor
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
Phone: (830) 221-1300
Fax: (830) 608-2008
E-mail: koehlm@co.comal.tx.us
Attorney for the State & Supervising Attorney

**Scott Walther**
Associate Member Number: 24096091
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
Phone: (830) 221-1300
Fax: (830) 608-2008
E-mail: walt1274@gmail.com

## Certificate of Service

I, Melroy, Assistant District Attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellant MATTHEW JARRETT LEE's attorney of record in this matter:

Frank B. Suhr
fsuhr@newbraunfelslaw.com
Law Offices of Frank B. Suhr
473 S. Seguin Ave., Suite 100
New Braunfels, TX  78130
*Attorney for Appellant on Appeal*

By electronically sending it through efile.txcourts.gov to the above-listed email address, this the 6th day of October, 2015.

/s/ Melroy Koehler
**Melroy Koehler**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are 5,668 words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Melroy Koehler
**Melroy Koehler**