

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00264-CR

**CORY DERELL ARCHIE,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

---

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 29957**

---

## MEMORANDUM OPINION

---

Appellant, Cory Derell Archie, appeals his conviction for manufacture or delivery of a controlled substance in an amount of one gram or more, but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c).  In two issues, Archie contends that:  (1) the trial court erred by admitting an unrecorded incriminating statement made in response to questions during the booking process; and (2) the evidence is legally insufficient to support Archie's conviction for the offense of manufacture or delivery of a

controlled substance. We affirm.

## Background

Pursuant to a felony warrant, Archie was arrested. A search incident to arrest revealed numerous drugs and drug paraphernalia, including methamphetamine, ecstasy pills cut with methamphetamine, synthetic marijuana, cocaine, prescription medications, a digital scale, Ziploc baggies, a plastic straw modified to consume a drug, a blade used to cut open cigars, and cigarillos. Lab tests later showed that four Ziploc baggies in a bag carried by Archie contained 0.39 grams, 0.35 grams, 0.34 grams, and 0.27 grams of methamphetamine, which amounted to more than one gram, but less than four grams, of methamphetamine.

In the squad car on the way to the jail, Archie was read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 467-68, 86 S. Ct. 1602, 1624-25 (1966). After asking multiple times whether he understood his rights, Archie eventually responded that all the officer had to do was read them.

Upon arriving at the jail, arresting Officer Craig Myers of the Huntsville Police Department began the booking process, which included asking Archie questions about height, weight, tattoos, family status, education, and alcohol and drug abuse. When Archie was asked whether he abused alcohol or drugs, he said no. Officer Myers then asked "what about meth?" Archie responded that he just "sells to dumb white boys," so that "he can overcharge them."

At trial, Archie objected to this line of questioning as violative of article 38.22 of the Texas Code of Criminal Procedure because it was the product of custodial interrogation that was not recorded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Archie urged the trial court to exclude his response to the question about the methamphetamine under article 38.23 of the Texas Code of Criminal Procedure. *See id.* art. 38.23. The State countered that this line of questioning was subject to the booking exception. The trial court overruled Archie's objection, but allowed him to make a bill of exceptions. The trial court specifically noted that the question was a legitimate booking question and that Archie's statement was unsolicited and uncoerced.

The jury found Archie guilty of the charged offense of manufacture or delivery of a controlled substance in an amount of one gram or more, but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c). The case proceeded to the punishment phase. Archie pleaded "true" to an enhancement paragraph in the indictment referencing his prior felony conviction for burglary of a habitation. After hearing the testimony of several witnesses, the trial court assessed Archie's punishment at twenty-five years' imprisonment with $180 in restitution. This appeal followed.

## Legal Sufficiency

We first consider Archie's second issue, in which he challenges the sufficiency of evidence to support his conviction for the offense of manufacture or delivery of a controlled substance in an amount of one gram or more, but less than four grams. *See id.*

§ 481.112(a), (c).  Specifically, Archie contends that the State failed to produce any evidence establishing an intent to deliver.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781.  We may not re-weigh the evidence or substitute our judgment for that of the factfinder.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence.  *Villa*, 514 S.W.3d at 232.  Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial.  *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution.  *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).  This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).  Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

APPLICABLE LAW

As stated earlier, Archie was charged with manufacture or delivery of a controlled substance--methamphetamine—in an amount of one gram or more, but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c). Under a hypothetically-correct jury charge, the State was required to prove beyond a reasonable doubt that Archie: (1) knowingly (2) possessed, (3) with intent to deliver, (4) one gram or more, but less than four grams of methamphetamine. *See id.* § 481.112(a), (c). Archie only challenges the element of intent to deliver.

Intent to deliver may be established by expert testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such as evidence of an accused's possession of the contraband. *See Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Patterson v. State*, 138 S.W.3d 643, 650 (Tex. App.—Dallas 2004, no pet.). Factors courts have considered include the following: (1)

the nature of the location where the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either use or sale); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Moreno*, 195 S.W.3d at 325-26 (citing *Lewis v. State*, 664 S.W.2d 345, 349 (Tex. Crim. App. 1984); *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Id*. at 326 (citing *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). "An oral expression of intent is not required." *Id.* Further, intent to deliver is a fact question for the trier of fact to resolve, and it may be inferred from the acts, words, or conduct of the accused. *See Taylor*, 106 S.W.3d at 831.

DISCUSSION

In the instant case, Officer Myers testified that, on the date in question, he was attempting to serve a felony warrant on Archie. Officer Myers learned that Archie was inside the residence of a "Mr. Freeman," who was known to Officer Myers based on "previous interactions." While Officer Myers trying to serve the felony warrant, Archie fled. Officer Myers and another officer chased Archie to the back side of the residence and were able to place him in handcuffs.

After arresting Archie, Officer Myers conducted a search incident to arrest and found "numerous items of drug paraphernalia, as well as drugs, on his person." Archie

told Officer Myers that he had a backpack that contained K-2, a synthetic marihuana. State's Exhibit 5 showed a big bag and a smaller bag of K-2 that was seized from Archie. In addition, Archie had a bag on his person that contained "a glass jar with a straw, a [digital] scale, lid, a bag with multiple smaller baggies on the inside, a small bag with what appears to be drug residue in it, and a cutter." Officer Myers also recounted that prescription pills later identified as cyclobenzaprine hydrochloride, a muscle relaxer, were also found inside the bag. Officer Myers confirmed that it is common for prescription medications to be sold on the street. Other bags inside the bag contained what appeared to be methamphetamine, cocaine powder, and two tablets of "Street Ecstasy." Four different plastic bags seized from the bag were tested. Lab results confirmed that an aggregation of contents of the four plastic bags exceeded one gram of methamphetamine. Specifically, the four plastic bags contained substantially similar amounts—0.39 grams, 0.35 grams, 0.34 grams, and 0.27 grams of methamphetamine, respectively. On cross-examination, Officer Myers confirmed that Archie: (1) had stated that he was homeless; and (2) did not have a significant amount of cash on his person at the time of arrest.

City of Huntsville narcotics detective Lance Schulz acknowledged that a significant indicator of dealing is "a larger amount of one drug," but he also emphasized that: "It's typical for dealers to not only deal in one particular drug so they may have various types of drugs with them." Detective Schulz echoed Officer Myers's testimony

that it is common for prescription medications to be sold or delivered at the street level. To differentiate a user from a dealer, Detective Schulz noted that "[a] dealer will typically have packaging for resale. You'll find a digital scale, things of that nature." He also stated that it is "really not typical for a user to have multiple baggies, but I guess it is possible." Moreover, when asked "if you found half a gram of meth and a baggie, another half a gram of meth and a baggie exactly the same, another half gram weighed out and the same type of bag, more of those bags, a straw, two separate things of prescription pills and the same bag, a bag of white powder in the same bag, as well as the digital scales and other items of paraphernalia, would you then think possibly dealer," Detective Schulz answered in the affirmative. Furthermore, Officer Myers stated that, during booking, Archie denied abusing drugs and admitted that he committed the charged offense when he stated that he just "sells to dumb white boys," so that "he can overcharge them."[1] In addition, there is no evidence in the record that Archie was under the influence of drugs at the time of his arrest.

The testimony at trial touches on several of the factors outlined in *Moreno*. *See* 195 S.W.3d at 325-26. Furthermore, the logical inference to be drawn from this set of facts is that the drugs were possessed with the requisite intent to deliver. *See id.* at 325-26; *see*

---

[1] Even if Archie's statement during the booking process was improperly admitted, in our sufficiency review, we are to consider evidence that was improperly admitted before the jury, as well as evidence that was properly admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Our review of 'all of the evidence' includes evidence that was properly and improperly admitted.").

*also Brooks v. State*, No. 10-07-00309-CR, 2011 Tex. App. LEXIS 1150, at **9-10 (Tex. App.—Waco Feb. 16, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that the logical force of the evidence showing that Brooks had more drugs than a user would normally use at one time, Brooks possessed three separate types of drugs, Brooks did not appear to be under the influence of any drugs at the time of arrest, Brooks did not have in his possession the tools necessary to ingest crack cocaine himself, and expert testimony that the evidence was consistent with what a dealer would have in his possession established the requisite intent to deliver).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient for the jury to support Archie's conviction for manufacture or delivery of a controlled substance in an amount of one gram or more, but less than four grams, of methamphetamine with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c); *Zuniga*, 551 S.W.3d at 732-33; *Moreno*, 195 S.W.3d at 325-26; *see also Brooks*, 2011 Tex. App. LEXIS 1150, at **9-10. And to the extent that the evidence conflicts, we are to defer to the jury's resolution of such inconsistencies in the evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and

demeanor, which the jury is in a better position to judge.").  We overrule Archie's second issue.

## Admissibility of Incriminating Statement Made During Booking

In his first issue, Archie contends that the trial court abused its discretion by permitting Officer Myers to testify to the incriminating statement regarding the sale of methamphetamine to "white boys" that was made in response to the question during the booking process.  Assuming, without deciding, that the admission of Archie's statement was error, we review the admission for harm.

Texas Rule of Appellate Procedure 44.2(b) provides that a non-constitutional evidentiary error "that does not affect substantial rights must be disregarded."  TEX. R. APP. P. 44.2(b); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."  *Motilla*, 78 S.W.3d at 355; *see Graff v. State*, 65 S.W.3d 730, 741 (Tex. App.—Waco 2001, pet. ref'd).  In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case.  *Motilla*, 78 S.W.3d at 355.  The reviewing court may also consider the jury

instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Id.* at 355-56. Furthermore, the reviewing court may consider whether the State emphasized the error. *Id.* at 356.

Having previously considered the record as a whole in our discussion of Archie's second issue, we have fair assurance that, even assuming the incriminating statement was erroneously admitted, it did not have a substantial and injurious effect or influence on the jury's verdict, especially given there was ample, unobjected-to evidence that supports Archie's conviction. We also note that the State did not emphasize the incriminating statement at trial. In fact, the State, in its opening and closing argument, focused primarily on the evidence seized during the arrest. The State did not mention the statement at all during opening statements, Officer Myers briefly mentioned it during direct examination, and the State only mentioned the statement once in it its closing argument and only in response to defense counsel's reference to the statement. We conclude that any error in admitting the complained-of evidence did not affect a substantial right and, therefore, must be disregarded. *See* TEX. R. APP. P. 44.2(b). We overrule Archie's first issue.

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH

Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed July 27, 2022
Do not publish
[CRPM]