

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00008-CR

_____

JOHN DAMIEN LUIS MONTIEL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. 2022F00161

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Cass County jury found John Damien Luis Montiel guilty of possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Supp.). The jury assessed Montiel's punishment at sixteen years' imprisonment. Montiel appeals. On appeal, Montiel claims the trial court erred in finding that he was guilty because "there was insufficient evidence to support the guilty verdict when the elements of the offense were only testified to by a codefendant in this matter without corroboration." Upon review, we find there was sufficient evidence to support the jury's guilty verdict and sufficient evidence to corroborate Horton's testimony. As a result, we affirm.

## I.     Factual Background

On December 28, 2021, at approximately 12:50 AM, Deputy Eric White[1] with the Cass County Sheriff's Office was on patrol on U.S. Highway 59. Deputy White testified that he had been in law enforcement for forty-two years. During his patrol that early morning of December 28, he "was southbound on U.S. 59 north of Queen City between Queen City and what's normally called the Conoco Hill area." Then, he "saw a northbound vehicle that was running pretty fast," he checked the radar, and the vehicle was traveling at "89 miles an hour" when the speed limit was only seventy-five miles per hour.

After Deputy White met the speeding vehicle, he drove to the next crossover and turned around "to catch back up to him to make a traffic stop." As Deputy White approached the vehicle, it "had slowed down a whole lot," and the vehicle was "running under the speed limit."

---

[1] In 2021, at the time of the incident in question, White was a deputy; by the time of trial, he was a sergeant. In this opinion, we will refer to him as Deputy White.

Deputy White then turned his lights on to initiate a traffic stop, but the vehicle did not immediately pull over. Instead, "[i]t accelerated and then slowed down and then accelerated again and then slowed down, accelerated again and finally pulled into the parking lot of the R.V. Corral." Deputy White noted the vehicle was a "white 2018 Honda Accord" with "Texas temporary license plates."

Deputy White then approached the driver's side of the vehicle. As Deputy White leaned down to talk to the driver, he noticed that there was a "strong odor of [an] alcoholic beverage on his breath and from the vehicle" and that the driver's "eyes were red and watery." Deputy White requested his driver's license and identified the driver as Montiel. Deputy White also observed that Montiel had a female passenger, and Deputy White identified that individual as Faith Alexia Horton. Deputy White returned to his patrol car, checked the driver and the passenger for outstanding warrants, and called his sergeant for backup.

Thereafter, Deputy White testified that he left his patrol car and asked Montiel to step out of his vehicle so that he could perform a field sobriety test. Deputy White performed the horizontal gaze nystagmus (HGN) field sobriety test on Montiel, and Deputy White found "it was fairly obvious that [Montiel] had been drinking in just the recent past, within the last hour or so." Deputy White testified that, while he was performing the HGN test on Montiel, Horton was sitting in the front passenger seat of the vehicle.

After he performed the HGN test, Deputy White left Montiel outside of the vehicle and returned to the front of the vehicle to question Horton. Once Deputy White returned to the front of the vehicle, he saw "a small bag of cocaine laying on the driver's seat," and he opened the

3

driver's door. Deputy White noticed the bag was flat, which indicated to him that Montiel had been sitting on the bag. After discovering the cocaine, Deputy White did not perform any other field sobriety tests on Montiel. Deputy White then placed Montiel under arrest.

Deputy White testified that he believed the cocaine to be Montiel's cocaine. Deputy White also testified that he did, however, consider whether the cocaine could have been Horton's cocaine instead. But based upon Horton's reaction to the discovery of the cocaine, Deputy White did not believe that it was likely. Deputy White testified on that issue as follows:

> Q. [(By the State)] Okay. And did you consider that the cocaine could be hers?

> A. [(By Deputy White)] Yes, sir.

> Q. Ultimately did you find that reasonable?

> A. No, sir. It didn't seem reasonable just judging by her reaction at the time that I located it. And through my conversations with her, she adamantly denied ever using drugs before and stated that she had just met the driver.

> Q. Okay. And you said her reaction when you saw it, what was her reaction when you saw the cocaine?

> A. To me just like she hadn't seen it before.

In addition to Deputy White, Horton also testified. Horton testified that, at the time of trial, she was twenty-two years old and that she had been friends with Montiel for two years. Horton testified that she was riding in the passenger seat of the vehicle when Deputy White pulled Montiel over. Deputy White testified that he believed the vehicle was Montiel's vehicle. After Montiel was pulled over, he pulled out a bottle of whiskey, which he directed Horton to hide in her bag. Montiel then "started reaching in his pocket." Montiel told Horton that "he lost

4

something" that he was trying to find. He told Horton, "I can't find' something." Horton asked Montiel what he could not find, and Montiel told her it was cocaine.

After Montiel left the vehicle with Deputy White for a field sobriety test, Horton was sitting alone in Montiel's vehicle, and she noticed "a bag in the seat." Subsequently, Deputy White came back to Montiel's car and saw the bag in the driver's seat. Deputy White arrested Montiel. Montiel then asked Horton to say it was her cocaine, but she replied, "No, I have a kid."

Horton testified that, the next day, Montiel contacted her and asked her to "take the charge." Horton took that to mean that she was to say it was her cocaine. Thereafter, Montiel asked her on several occasions to "take the charge," but she declined to do so. Horton also testified that Montiel contacted her before the trial and asked her not to show up "[b]ecause the outcome might be different." Horton denied that the cocaine was her cocaine.

## II.    There is Sufficient Evidence to Support the Jury's Verdict

In evaluating legal sufficiency, we review all evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of possession of a controlled substance beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a)–(b). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Priego v. State*, 457 S.W.3d 565, 568 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). We examine legal sufficiency in accordance with the *Brooks* opinion, while giving the jury deference "to fairly

5

resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

Legal sufficiency is "measured by the elements of the offense as defined by the hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Section 481.115(a) of the Texas Health and Safety Code criminalizes the following:

(a)    Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 or 1-B, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

TEX. HEALTH & SAFETY CODE ANN. § 481.115(a).

To prove a person is guilty of possession of a controlled substance under this provision, the State must prove the following: "(1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015). According to Montiel's briefing, he only claims the evidence is insufficient as to the first element.[2]

---

[2]Montiel agrees the substance in question was cocaine, and the "lab tests . . . conclusively prove that element."

For the first element, the accused's connection with the drug must be more than just fortuitous "proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406. To protect from such a coincidental relationship, the Texas Court of Criminal Appeals has

> formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband."

*Id.* (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)).

The Texas Court of Criminal Appeals has recognized fourteen non-exclusive factors that may affirmatively link a defendant to the contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 36 (Tex. App.—San Antonio 2005, no pet.)).

Here, despite Montiel's claim to the contrary, the State presented evidence of several affirmative links that provide sufficient evidence of possession. Deputy White testified that the cocaine was in plain view, and Deputy White found the cocaine in Montiel's car on the driver's

7

side of the vehicle. According to Deputy White's testimony, the bag was flat, which indicated Montiel had been sitting on the bag. *See, e.g.*, *Harris v. State*, 713 S.W.2d 773, 775 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (affirming a conviction for possession where one of the facts supporting the conviction was the cocaine was found under the seat cushion where the appellant had been sitting). These facts support the second and third factors. For the fourth and ninth factors, although Montiel was apparently not under the influence of cocaine, Deputy White testified that Montiel appeared inebriated at the time of the stop and smelled of alcohol. As for the fifth factor, Montiel had an open bottle of whiskey in his vehicle, which Horton testified was Montiel's bottle.

For the fourteenth factor, after the cocaine was found, Montiel attempted to persuade Horton to "take the charge" and later not to testify, which indicates a consciousness of guilt. Based upon this evidence, and the non-exclusive factors listed in *Evans*,[3] we find these affirmative links are sufficient evidence of possession. *See, e.g.*, *Biggers v. State*, 634 S.W.3d 244, 254 (Tex. App.—Texarkana 2021, pet. ref'd) (recognizing that "[t]he number of factors present is not as important as the logical force the factors have in establishing the elements of the offense" (alteration in original) (quoting *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd))).

## III. Horton's Testimony Was Sufficiently Corroborated

In his brief, Montiel also claims that "[t]he trial court erred in finding [him] guilty in this matter because there was insufficient evidence to support the guilty verdict when elements of the

---

[3]*See Evans*, 202 S.W.3d at 162 n.12.

offense were only testified to by a codefendant in this matter without corroboration." Upon review, we find Horton's testimony was sufficiently corroborated.

As an initial matter, "a challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole." *Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.). The standard for corroborating accomplice-witness testimony is the following: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Cantelon*, 85 S.W.3d at 460–61. "To determine the sufficiency of the corroboration, we eliminate the testimony of the accomplice and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime." *Cantelon*, 85 S.W.3d at 461.

Further, the "sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). "The non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt." *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). Indeed, the "direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith*, 332 S.W.3d at 442. In evaluating this evidence, we "view the evidence in

the light most favorable to the jury's verdict." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).

At the trial, both the accomplice witness,[4] Horton, and the arresting officer, Deputy White, testified. After eliminating Horton's testimony, as we are required to do under *Cantelon*,[5] we find Deputy White's testimony provides sufficient corroboration for Horton's testimony. Deputy White testified that he pulled Montiel over for speeding and that, after the stop, he asked Montiel to step out of his vehicle and then administered an HGN test. Once he had conducted that test, Deputy White testified that he waited for back-up and then approached the front of the vehicle to question Horton. After looking in Montiel's vehicle, Deputy White testified that he saw a bag of cocaine and that the bag was in the driver's seat and was flat, as if Montiel had been sitting on the bag.

Based upon Deputy White's testimony, we find "rational jurors could conclude that this evidence sufficiently *tended* to connect the appellant to the offense." *Cantelon*, 85 S.W.3d at 461 (quoting *Hernandez*, 939 S.W.2d at 178–79); *see also Davison v. State*, 602 S.W.3d 625, 644 (Tex. App.—Texarkana 2020, pet. ref'd) (finding accomplice-witness testimony was sufficiently corroborated); TEX. CODE CRIM. PROC. ANN. art. 38.14. Consequently, we find Horton's testimony was sufficiently corroborated.

---

[4]We assume, for purposes of this opinion, that Horton should be considered an accomplice-witness under Article 38.14. *See Cocke v. State*, 201 S.W.3d 744, 747–48 (Tex. Crim. App. 2006) (recognizing a witness is an accomplice as a matter of law where the evidence clearly shows "the witness has been, or could have been, indicted for the same offense").

[5]*See Cantelon*, 85 S.W.3d at 460.

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      September 11, 2024
Date Decided:        October 11, 2024

Do Not Publish